(No. 13296.—Judgment affirmed.)

WILBERT BERNIER, Admr. Defendant in Error, *vs.* THE ILLINOIS CENTRAL RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed February 15, 1921.*

1. NEGLIGENCE—*whether injury has been wantonly inflicted is a question of fact for the jury—instruction.* The question whether a personal injury has been inflicted by willful or wanton conduct is a question of fact to be determined by the jury, and the Supreme Court is bound by the judgment of the Appellate Court affirming that of the trial court in an action for wrongful death where an instruction requested by the defendant limits a recovery to counts charging a willful injury and the jury finds against defendant.

2. SAME—*what constitutes a wanton act.* Ill-will is not a necessary element of a wanton act, but to constitute such an act the party acting or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury.

3. SAME—*whether act is wanton depends upon circumstances of each case.* It is difficult, if not impossible, to determine by rule what degree of negligence is equivalent to a willful or wanton act, and the question depends largely on the circumstances of each case.

4. SAME—*when willfulness or wantonness may be presumed.* Where an omission to exercise care is so gross that it shows a lack of regard for the safety of others it will justify the presumption of willfulness or wantonness.

5. Same—*when railroad company must keep watch for persons on its tracks.* Where a railroad company has permitted the public to travel over its track for a considerable period of time and a considerable number of people have availed themselves of such use the company must keep a lookout for persons on the track.

6. Same—*peremptory instruction should not refer to pleadings for the issues.* The court should not give a peremptory instruction to find for the plaintiff if the jury should find that he has proved his case as alleged in the declaration, as it is the duty of the court to define the issues to the jury without referring to the pleadings to ascertain what they are.

7. Same—*what is not a peremptory instruction.* In an action for wrongful death, an instruction which does not direct a verdict for the plaintiff and does not purport to lay down any rule regarding the liability of the defendant but simply lays down a rule for the measure of damages in case the jury believe defendant is guilty as charged in the declaration is not a peremptory instruction.

8. Same—*defendant may request the court to define the issues to the jury.* The defendant may request the court to inform the jury by instructions what the issues are under the different counts of the declaration and to tell them that there can be no recovery unless the material allegations are proved.

9. Same—*when it will be assumed that declaration was not delivered to the jury.* In civil actions the court should not permit the pleadings to be taken by the jury when they retire to consider their verdict, and it will be assumed on review, in the absence of any showing to the contrary, that the court did not deliver the declaration to the jury.

10. Same—*wanton injury by a railroad company need not be proved beyond reasonable doubt.* In an action against a railroad company whose train killed a pedestrian, to maintain a charge of wanton or willful injury it is not necessary to prove the railroad company guilty of a criminal offense, and the evidence need not establish the guilt of the company beyond a reasonable doubt.

11. Appeals and errors—*party cannot complain of error he has induced the court to commit.* A party at whose request inconsistent instructions have been given by the court cannot complain of the error he has thus induced the court to commit.

Writ of Error to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kankakee county; the Hon. A. W. DeSelm, Judge, presiding.

296—30

W. R. HUNTER, (JOHN G. DRENNAN, of counsel,) for plaintiff in error.

E. A. MARCOTTE, and J. BERT. MILLER, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This was an action on the case brought by defendant in error in the circuit court of Kankakee county to recover damages against plaintiff in error for the death of Bernice Bernier, a sixteen-year-old girl. The accident causing her death occurred about eight o'clock in the evening of October 4, 1917, on the right of way of the Illinois Central Railroad Company in front of its passenger station in the city of Kankakee. The declaration consisted of two original and three additional counts. The first original count charged that plaintiff in error willfully and wantonly ran its train against deceased and killed her. Other counts set up facts in relation to a certain cinder pathway across the tracks of plaintiff in error and its use by the public and charged negligent operation of the train across this pathway, and also set out an ordinance of the city limiting the speed of passenger trains to ten miles an hour, and the violation of said ordinance by plaintiff in error and the death of deceased as a result thereof. Plaintiff in error pleaded the general issue. The jury found it guilty and assessed damages at $5000. The judgment entered on this verdict was affirmed on appeal to the Appellate Court, and the case was brought to this court by *certiorari* to review that judgment. The judgment was affirmed at a former term of this court, a rehearing was granted, and the case is here for further consideration of points alleged to have been overlooked and misapprehended by the court.

The tracks of the Illinois Central Railroad Company run through the city of Kankakee in a northerly and south-

erly direction, dividing the city into two parts.  About 3500 people, or one-fifth of the population, live on the west side of the right of way.  At the point where its passenger station stands the right of way occupies the full block between East avenue on its east side and West avenue on its west side.  The station is on the east side of the right of way.  Merchant street east runs east from the passenger station at right angles to East avenue, and Merchant street west runs west from West avenue at a point opposite the station.  Merchant street has never been laid out from East avenue to West avenue.  One block north of Merchant street Court street passes over the railroad on a stone viaduct, and one block south of Merchant street Station street crosses the railroad at grade.  There are six tracks on the right of way in front of the passenger station.  The east track, or the one nearest the passenger station, is the north-bound main, and the track immediately west is the south-bound main.  The four tracks west of these mains are switch tracks, used principally for freight yards.  Between the passenger station and the north-bound main is a wide platform.  The space from the station platform to the east rail of the south-bound main is planked.  These platforms are for the accommodation of passengers going in either direction.  For many years people traveling on foot between the parts of the city east and west of the railroad and to whom Merchant street if extended across the railroad would be most convenient, and people in the west part of the city wishing to go to and from the passenger station have been in the habit of going across this right of way over all six tracks when the tracks were not blocked by trains or standing cars.  For more than ten years before this accident a cinder path has existed across the right of way from the west side of the platform to the east side of West avenue, practically on the line of what would be the north side of Merchant street if that street had crossed the right of way.  The employees of the railroad company placed this cinder path there for their

own convenience in conveying ashes from the depot to the west side of the right of way. For several years a large signboard was maintained on the west side of the right of way immediately to the north of Merchant street extended, warning people of the danger and forbidding them to trespass upon the railroad grounds.

Deceased, with her parents, lived at Clifton, a village south of Kankakee. They came to Kankakee that afternoon and visited a relative at a hospital which was located in the west part of the city. When they left the hospital they approached the depot from the west. Mr. Bernier turned off Merchant street on an errand, while the deceased and her mother proceeded east on the north side of Merchant street west on their way to the depot to purchase tickets for Clifton. They planned to get their tickets at that time and then go to a moving picture show with Bernier, spending the time there until about ten o'clock, when their train left. Mrs. Bernier and her daughter started across the tracks toward the passenger station on the cinder path. A long freight train, consisting of more than fifty box cars, was then going north on the north-bound main. They crossed the four switch tracks and the south-bound main and were standing close to the east rail of that track waiting for the freight train to pass. The limited passenger train from Chicago to New Orleans was due in Kankakee at 8:05 P. M. and was then approaching the station from the north on the south-bound main. Mrs. Bernier said she looked in both directions for moving trains but saw none, and that she heard no bell or whistle. The freight train was making a very loud, grinding noise, and the smoke of its engine and the curve of the track beyond the viaduct would all tend to prevent the women from seeing or hearing the on-coming passenger train. An eye-witness testified that the passenger train passed under the viaduct, a block north of the women, at a speed of between twenty and thirty miles an hour. The engineer testified

that he entered the north city limits going about forty miles an hour; that he gradually slowed down so that he was not going more than fifteen miles an hour when he went under the viaduct and that when he struck the women he was not going more than ten miles an hour. According to his testimony the headlight was burning and the bell was automatically ringing. He said that as he went under the viaduct he saw the women approaching the south-bound main from the west and saw them pass over the east rail of this track. The space between the north-bound and south-bound mains was about ten feet, giving a clearance of more than six feet between the passing trains. He testified that he assumed the women knew of his train and that they expected to step into the zone of safety between the passing trains. He gave them no warning at this time. He raised his eyes from the women and looked at his signal board for his orders and saw that he had a clear board. When he was about seventy-five feet north of the women he glanced down again and saw that they were standing too near the east rail for him to clear them. He sounded the alarm whistle and applied the brakes. The women did not move until the engine struck them. Mrs. Bernier was knocked about thirty feet ahead and deceased about fifty feet, both of them being thrown on the platform between the two mains. The train came to a stop a short distance from the place where the women were struck. After the freight train had passed, depot employees who had been attracted by the alarm whistles picked up the two women. Mrs. Bernier was unconscious and Miss Bernier was dead.

Plaintiff in error asked and the court gave to the jury instruction No. 17, as follows:

"You are instructed by the court that at the time deceased was struck by the locomotive she was upon the property of the defendant and was nothing more than a licensee thereon. That is to say, she was on said tracks at her peril, and the only duty defendant owed to deceased was

that upon discovering she was in danger the law would require defendant to use every reasonable effort to keep from injuring the deceased."

By giving this instruction the trial court practically limited a recovery to that count charging a willful and wanton injury. If the jury followed this instruction we must presume that they found defendant guilty of a willful and wanton injury. It was for the jury to decide at what rate of speed the train approached the station, and whether or not the engineer exercised that degree of care which he was bound to exercise when he saw the women in a place of danger or whether he wantonly drove his train against them. These are questions of fact which we are not authorized to determine. The judgment of the Appellate Court has concluded those questions. The issues were properly left to the jury, and two juries have found against plaintiff in error. (*Lake Shore and Michigan Southern Railway Co.* v. *Parker,* 131 Ill. 557; *Sullivan* v. *Ohlhaver Co.* 291 id. 359; *Walldren Express and Van Co.* v. *Krug,* 291 id. 472.) The question whether a personal injury has been inflicted by willful or wanton conduct is a question of fact to be determined by the jury. *Illinois Central Railroad Co.* v. *Leiner,* 202 Ill. 624.

Ill-will is not a necessary element of a wanton act. To constitute a wanton act the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury. (20 R. C. L. 21.) It is difficult, if not impossible, to lay down a rule of general application by which we may determine what degree of negligence the law considers equivalent to a willful or wanton act. Whether an act is willful or wanton is greatly dependent upon the particular circumstances of each case. Where the omission to exercise care is so gross that it shows a lack of regard for the safety of

others it will justify the presumption of willfulness or wantonness. Here the engineer admits that when he was less than a block from these women he saw them walking directly in front of a heavy and fast-moving passenger train. He gave them no warning and made no effort to stop his train. When they were on the east rail of his track, scarcely more than a hundred feet from him, he failed to give them warning, but, raising his eyes from them, allowed his engine to move on toward them, not knowing whether they realized their danger and not taking into account that they might become panicstricken when they found themselves between two passing trains. Six feet between two passing trains is a rather narrow space to be designated as a zone of safety. It is common knowledge that more or less suction is created by a moving train, which is especially dangerous to women owing to the nature of their clothing, and it is not uncommon to hear of accidents caused by projections from moving trains, such as the one that resulted in the serious injury in *Curran* v. *Chicago and Western Indiana Railroad Co.* 289 Ill. 111. Where a railroad company has permitted the public to travel over its track for a considerable period of time and a considerable number of people have availed themselves of such use, the railroad company must keep a lookout for persons on its track. (*Joy* v. *Chicago, Burlington and Quincy Railroad Co.* 263 Ill. 465.) The finding of the jury and the holding of the Appellate Court that the railroad company wantonly killed this girl finds support in the conclusions reached by this court in *Lake Shore and Michigan Southern Railway Co.* v. *Bodemer,* 139 Ill. 596; *Chicago Terminal Railroad Co.* v. *Kotoski,* 199 id. 383; *Chicago Terminal Railroad Co.* v. *Gruss,* 200 id. 195; *Neice* v. *Chicago and Alton Railroad Co.* 254 id. 595; *Heidenreich* v. *Bremner,* 260 id. 439.

The point urged on rehearing that was not considered in the opinion previously adopted is, that the court erred in giving instruction No. 1 on behalf of defendant in er-

ror.   A casual reference to this alleged error was made in the original brief of plaintiff in error, but the point was not pressed in the argument and was therefore not discussed in the opinion.   The instruction reads:

"The court instructs you that if you believe from a preponderance of the evidence that the defendant is guilty as charged in the plaintiff's declaration, then, in determining the amount of damages, if any, to be awarded to the plaintiff as administrator, you should fix such amount for your verdict, as will, in your judgment, from all the evidence be a fair and just compensation to the next of kin of decedent for the pecuniary loss, if any, resulting to them by reason of her death."

It is contended that this instruction refers the jury to the declaration to determine the issues and that it is in direct conflict with the instruction hereinbefore quoted, for the reason that that instruction limited recovery to the first count of the declaration and that this instruction authorizes a verdict upon any of the counts of the declaration.   We have repeatedly held that the court should not give a peremptory instruction to find for the plaintiff if the jury should find that he had proved his case as alleged in the declaration, and further, that it is the duty of the court to define the issues to the jury without referring them to the pleadings to ascertain what they are.   (*Krieger* v. *Aurora, Elgin and Chicago Railroad Co.* 242 Ill. 544; *McFarlane* v. *Chicago City Railway Co.* 288 id. 476; *Laughlin* v. *Hopkinson,* 292 id. 80.)   But we do not consider this a peremptory instruction.   The instruction does not direct a verdict for the plaintiff, but says, simply, that if the jury find the defendant guilty then they shall award to the plaintiff certain damages.   The instruction does not purport to lay down any rule regarding the liability of plaintiff in error, but lays down a rule for the measure of damages in case plaintiff in error is found liable for the death.   (*Bonato* v. *Peabody Coal Co.* 248 Ill. 422; *Illi-*

*nois Central Railroad Co.* v. *Gilbert,* 157 id. 354.) This instruction is entirely different from that form of instruction which declares "that if the jury find from the evidence that the plaintiff has made out his case as alleged in the declaration then they should find defendant guilty." Furthermore, we consider the question of the liability of plaintiff in error clearly limited by the instructions to the first count of the declaration. Plaintiff in error had the right to request the court to inform the jury by instructions what the issues were under the different counts of the declaration and to tell them that there could be no recovery unless the material allegations were proven. (*Chicago City Railway Co.* v. *Foster,* 226 Ill. 288; *Scott* v. *Parlin & Orendorff Co.* 245 id. 460.) It exercised this privilege, and on its request the court instructed the jury as follows:

"You are instructed that the first count of the declaration charges that the defendant by its servants willfully and wantonly ran the train against the deceased and injured her, from which injury she died."

This is the only instruction given the jury which informed the jury what the issue was. The record is silent as to whether the declaration was taken by the jury in their retirement, and since the court should not permit the pleadings in civil actions to be taken by the jury when they retire to consider their verdict, (*Elgin, Aurora and Southern Traction Co.* v. *Wilson,* 217 Ill. 47,) we must assume that the court did its duty in this regard and did not deliver the declaration to the jury.

In addition to instruction No. 17, hereinbefore quoted, which specifically limited recovery to the first count of the declaration, the court gave other instructions having the same tendency. Instruction No. 13 told the jury that a person approaching or crossing railroad tracks is bound to know it is a place of danger and is required to exercise a degree of care commensurate with the surroundings, and unless plaintiff proves by a preponderance of the evidence

that the deceased, while approaching and crossing the track, used that degree of care for her personal safety which a reasonably prudent person in the exercise of due care would use, there can be no recovery in this case "unless you further believe that the death of Bernice Bernier was caused by the willful and wanton act of defendant." Instruction No. 14 informed the jury of the defense of contributory negligence, and concluded that there could be no recovery unless the jury believed "that the death of Bernice Bernier was caused by the willful and wanton act of defendant." The instructions setting forth the defenses of contributory negligence and want of due care were inconsistent with instruction No. 17 hereinbefore quoted, but the inconsistent instructions were given at the request of plaintiff in error and it cannot now complain of error which it led the court to commit. *Snyder* v. *Snyder,* 142 Ill. 60; *Consolidated Coal Co.* v. *Haenni,* 146 id. 614; *Illinois Central Railroad Co.* v. *Harris,* 162 id. 200.

Plaintiff in error further contends that an instruction which permitted the counts charging death by willful and wanton act to be established by a preponderance of the evidence is incorrect, because crime alleged in civil proceedings must be proved beyond a reasonable doubt. This action is against the railroad company, and whether the conduct of the engineer amounts to a crime is immaterial. The engineer is a stranger to the suit and is in no way bound by the judgment in this case. It was not necessary to the maintenance of this cause of action to prove the railroad company guilty of a criminal offense, and therefore the evidence need not establish the guilt of the company beyond a reasonable doubt. *Foster* v. *Graf,* 287 Ill. 559.

Finding no reversible error the judgment of the Appellate Court is affirmed.                    *Judgment affirmed.*