## Clarence McDaniels, Appellee, v. Terminal Railroad Association of St. Louis, Appellant.

Opinion filed November 8, 1939.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, for appellant.

C. A. GEERS and MARK D. EAGLETON, both of St. Louis, for appellee.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

The appellee, Clarence McDaniels (hereinafter called plaintiff), recovered judgment in the circuit court of Madison county in the sum of $20,000, from which judgment appellant, Terminal Railroad Association of St. Louis (hereinafter called defendant) appeals to this court.

Plaintiff's action was based upon personal injuries sustained by plaintiff on February 28, 1936 as the result of his being struck and injured by a large wooden

girder which was thrown or dropped from defendant's overhead bridge by employees of the defendant. Plaintiff testified that, at that time, he was walking along a cinder path on the east side of the tracks of the Wabash Railroad on the Wabash Railroad right of way, over which the bridge of the defendant was maintained pursuant to contract between the defendant company and the Wabash Railroad Company.

Plaintiff's complaint charged that plaintiff was walking along a certain cinder path or roadway on the east side of the Wabash Railroad Company track, which was much used by employees of "other railroad companies, and by pedestrians and vehicles of the general public, and that said use of said cinder path or roadway was well known to Defendant and its Agents." It was alleged in such complaint that the defendant maintained a railroad bridge, or viaduct, extending over and above the Wabash tracks and over and above the cinder path or roadway, near the city of Venice. It was further alleged that while the plaintiff was in the exercise of due care and caution, in walking in a southerly direction along the cinder path or roadway, and had reached a point on the cinder path under or near the defendant's overhead viaduct or bridge, that defendant's agents carelessly and negligently caused a large wooden girder to fall or be thrown from the viaduct, causing serious and permanent injuries to plaintiff. In another count the complaint charges the defendant and its agents with wantonly and willfully causing the wooden girder to be thrown from the viaduct and so causing plaintiff's injuries.

Defendant, in its answer, in addition to denial of the allegations of plaintiff's complaint, pleaded that, on May 14, 1936, plaintiff and defendant settled all controversies existing between them by the payment of $50 in cash, and the payment of certain hospital bills of plaintiff, and that plaintiff signed a release of his claim in consideration thereof. In his reply, after de-

nying the allegations of defendant's answer and re-affirming the allegations of the complaint, plaintiff, in substance, alleged facts tending to show that the execution of the release was obtained by fraud. A further plea by defendant, and a reply to such plea by plaintiff, asserted, on part of plaintiff, and denied, on behalf of defendant, that the release was obtained through fraud.

Witnesses who testified on behalf of plaintiff established, as do the photographs in evidence in the case, that there was a well-worn pathway along the easterly side of the Wabash tracks, that passed under the viaduct or bridge which was maintained by the defendant. Such witnesses further testified that such pathway had been there for many years, and had been in daily use by members of the public for as many as 20 years. Specific reference was made to the fact that school children regularly used the pathway, which, if followed, constituted a "short-cut" between certain populous centers, and also between residences which were near the viaduct of defendant. One of the two employees of the defendant company, who was called as a witness by plaintiff (and who had participated in throwing or dropping the girder which struck plaintiff), testified that he had worked on the bridge of the defendant for nearly a year and that he knew of the walkway east of the Wabash tracks, and that he had seen many people walking up and down there before the day upon which the plaintiff suffered his injuries.

The evidence shows that the plaintiff was a man 57 years of age, who had been employed as a machinist in various communities, but who was unemployed at the time of the accident on February 28, 1936, and had been unemployed since the previous September. The evidence further shows that on the day upon which he was injured the plaintiff had come in from Springfield on an Illinois Central freight train and got off at Madison, Illinois; that he walked around the streets of Madison, and then down the railroad tracks, and that

before he turned into the pathway, he was walking along the railroad tracks of the Wabash Railroad.

It was further shown that plaintiff was walking along the cinder path just before he was struck, and had walked under the viaduct and was about six feet east of the Wabash Railroad track when he was struck by the heavy timber which was thrown off the viaduct by the defendant's employees. It was also shown by the evidence that just prior to that time, two of defendant's employees who had worked for defendant company for a number of years and who were, at the time, engaged in making repairs on defendant's bridge, had taken out a guard rail on the bridge which measured 6 inches by 8 inches, and was 18 feet long. Such guard rail was shown to have weighed about 250 pounds. The two employees of defendant then lifted such guard rail, which was taken about 200 feet from the east end of the bridge, and walked along the bridge nearly 200 feet to a point immediately above the pathway along which the plaintiff was walking, apparently looking through cracks in the flooring to see if anyone was underneath the bridge. Defendant's employees testified that they rested the heavy timber on the bridge railing preparatory to pushing it off, and that they looked down on the south side of the bridge and shouted, "Look out," or, "Look out below." They were not sure whether they shouted once or twice, but they both testified and admitted that they did not look to the north, from which direction plaintiff was coming, and that they did not see plaintiff. The guard rail was pushed or thrown off the viaduct by the employees of the defendant company and struck the plaintiff. Plaintiff testified that he was thereby rendered unconscious, and that when he regained consciousness he was in a hospital, to which he was taken pursuant to a call made by defendant's employees. Plaintiff was very severely injured as the result of being struck by the timber and suffered considerable pain. The doctors who testified,

indicated that plaintiff suffered a fractured spine, and other injuries which are permanent in character, with the result that plaintiff will be required to wear a brace the remainder of his life, and will never again be able to do manual labor.

On behalf of defendant, the defendant's claim agent testified that he had gone to the hospital on May 13, 1936, after having been advised of defendant's condition from reports received from the hospital, including the information that plaintiff had suffered a fractured spine. He did not communicate such information to plaintiff, and plaintiff at the time did not know he had a fractured spine. The claim agent testified that he made an arrangement with plaintiff by the terms of which plaintiff was to execute the release, which was introduced in evidence, in consideration of the payment to him of $50 and of the payment of hospital bills incurred as the result of his injuries. He stated that he told plaintiff there was no liability to him because he was a trespasser, but that if plaintiff wanted some railroad fare he would pay him some. He returned the next day with the releases, which he testified plaintiff examined for a sufficient length of time to permit him to read the same, and then signed such releases (taken in triplicate), after which plaintiff was handed $50 in cash by defendant's claim agent. In this connection, on his behalf, plaintiff testified that, he did not send for the defendant's claim agent; that the claim agent advised him that the hospital bill must be paid and that plaintiff would be required to sign it; that the claim agent advised him that he would bring the papers relating to the hospital bill with him the next day and asked the plaintiff if he needed a little spending money, which plaintiff agreed to accept. Plaintiff testified that the defendant's claim agent returned on the following day with the papers in his hand, and that the papers were clamped together with a hospital form on top; that he was told to sign on the next sheet, and on

the other two sheets, which were indicated to him by the defendant's claim agent, none of which were turned up far enough for him to read them. Plaintiff testified that the hospital form was over the top sheet, and that he did not know and was not told that he was signing a release of his claim against the defendant company. He, likewise, testified that he did not read the releases; that he was in considerable pain; and that he did not have his glasses available at the time. The doctor at the hospital, and a nurse who was in attendance, and who acted as witnesses, testified that they saw the plaintiff sign the documents, which the claim agent read to him, and which he apparently read, and observed the defendant's claim agent give the $50 in cash to the plaintiff. The nurse likewise testified that defendant's claim agent explained to plaintiff what the release was about. She also acted as a witness on the document. Plaintiff maintained, in rebuttal (in addition to a denial that he read the releases, or that the releases were read to him), that nothing was said with reference to settling his lawsuit, but that he was asked whether he could use a little spending money, to which he replied in the affirmative, and that he accepted the $50 with that understanding. He stated that all arrangements had been made by the claim agent as to the hospital bill and the spending money the previous day, and on this day he was told and understood that he was simply completing such transaction, and did not understand that he was signing a release. He used the $50 and never paid it back to the defendant company, nor did he reimburse the defendant company for the amount of the hospital bill, $595.95, which had been paid by the defendant to the hospital on his behalf.

On trial before a jury a verdict was returned in favor of plaintiff in the sum of $20,000, upon which verdict judgment was entered. Defendant company filed motions for directed verdict at the close of plaintiff's evidence and at the close of defendant's evidence, as to

each count, and likewise filed a motion for new trial, all of which motions were denied by the court. The judgment was entered on February 14, 1939, and 18 days after the rendition of the judgment, on March 4, 1939, defendant filed its notice of appeal to this court in the office of the circuit clerk of Madison county. Plaintiff's counsel were not served with notice of appeal until March 7, 1939, which was 21 days after the rendition of the judgment. As a result of the fact that such notice of appeal was served on attorneys for plaintiff 21 days after the entry of judgment, plaintiff appellee filed a motion in this court to dismiss the appeal, to assess damages in favor of appellee, or, in the alternative, to strike the cause from the docket on the ground that such failure to serve plaintiff appellee, or his attorneys, with notice of appeal within 20 days after the rendition of the judgment constitutes a violation of Rule 11 of this court, and of section 82 of the Civil Practice Act [Ill. Rev. Stat. 1937, ch. 110, § 206; Jones Ill. Stats. Ann. 104.082] of this State. Said motion has been taken with the case for consideration.

The position of the appellee in this connection, succinctly stated, is that if notice of appeal is filed in the office of the clerk of the trial court within 20 days after the rendition of the judgment it is also mandatory that service of such notice of appeal be had upon opposing counsel within such 20-day period, and that a failure to effect such service within such 20-day period authorizes a dismissal of the appeal. We believe that such contention arises from a misapprehension of the rules of this court, and of the Civil Practice Act of this State.

Under section 76 of the Civil Practice Act (Ill. Rev. Stat. 1937, sec. 200 [Jones Ill. Stats. Ann. 104.076]) it is provided that an appeal may be taken within 90 days after the rendition of judgment, without leave of court. The appeal in the instant case was taken within 18 days after the entry of judgment. There are additional provisions in such section which relate to *super-*

*sedeas.* Rule 34 of the Supreme Court provides that a copy of the notice, by which the appeal is perfected, shall be served upon other parties, or counsel, within 10 days after the notice of appeal is filed in the lower court. Such rule further provides that where the appeal is taken as of right, such service is to be made within 90 days from the entry of the judgment. In the instant case (the notice of appeal having been filed within 18 days after the entry of judgment), the copy of notice of appeal was served on plaintiff's appellee's counsel 21 days after the rendition of judgment, and 3 days after notice of appeal was filed in the circuit court.

The contention of counsel for plaintiff appellee to the effect that Rule 11 of this court (which is similar to Rule 37 of the Supreme Court) and section 82 of the Practice Act so limit an appellant that if he files notice of appeal within the 20 days he must likewise serve appellee, or his counsel, within such period, strikes us as being wholly untenable. A construction of such character would be tantamount to construing the provisions relating to appeal as necessarily providing that no notice of appeal in which a *supersedeas* is not sought should be filed within 20 days after the entry of judgment, but only after the expiration of 20 days and prior to the expiration of the 90-day period set forth in the Practice Act. The provisions of section 82 of the Practice Act, and of Rule 11 of this court, and Rule 37 of the Supreme Court, relate to the question of obtaining a *supersedeas.* Neither the rules nor the section of the Practice Act in any manner operate to limit the general provisions of the act as to the time within which an appeal may be taken as a matter of right.

In the instant case the motion of the plaintiff appellee is not directed to any relief relating to the question of whether or not the appeal here involved operated as a *supersedeas.* The only relief requested is dismissal

of the appeal, or relief incident thereto. It is, therefore, unnecessary for us to pass on the question as to whether or not the service of notice of appeal after the expiration of the 20-day period prevented such notice of appeal from acting as a *supersedeas*. If that question were raised in some fashion in this court, an entirely different problem would have confronted us. It should be readily apparent, however, that there is no basis for dismissal of the appeal in the instant case by virtue of the service of notice of appeal after the 20-day period. It is our view that there has been a compliance with the rules of the court relating to appeal in this case, and we do not believe that any interpretation is either accurate or desirable, which would seek to rigidly require that an appeal once instituted within the 20-day period following the entry of judgment, must be completed, to be effective in any respect, in accordance with the specific provisions which relate to *supersedeas*. Those provisions manifestly govern the question of *supersedeas* alone. The fundamental question as to when notice of appeal and copies of notice of appeal must be filed and served, where *supersedeas* is not obtained, is controlled by provisions to which we have referred in this opinion. Such provisions have obviously been complied with and we must, therefore, deny the motion of plaintiff appellee to dismiss the appeal and for other relief as hereinabove stated, and proceed to a determination of this case upon the merits.

Defendant appellant relies for reversal in this cause upon a number of errors which were assigned, but which roughly fell into the following classifications:

(First) Defendant denies that it is liable to the plaintiff for the reason: (a) That the plaintiff was a trespasser, or, at most, a bare licensee, and that there is no evidence to show that the defendant was guilty of wilfulness or wantonness as charged in one of the counts of the complaint; (b) And that even if defendant owed the plaintiff a duty to exercise ordinary care,

that there was not sufficient evidence to establish negligence on the part of defendant and that plaintiff, as a matter of law, was guilty of contributory negligence.

(Secondly) Defendant contends that, as a matter of law, plaintiff is fully bound by the release executed by him on May 14, 1936, which by its terms purportedly releases plaintiff's cause of action.

(Thirdly) It is contended that the trial court erred in giving certain instructions on behalf of the plaintiff, and in refusing certain instructions offered by defendant; and,

(Lastly) It is contended that the judgment of $20,000 is excessive and is the product of erroneous instructions and passion and prejudice. Such errors relied upon by defendant are interrelated with the motions made on behalf of the defendant during the course of the trial, and other general assignments of error, but all alleged errors which were argued in this court in the brief of appellant, may be disposed of upon consideration of points hereinabove outlined.

On the question of liability, defendant maintains that plaintiff was a trespasser to whom the defendant owed no duty other than not to wilfully or wantonly injure him. The railroad and trespasser cases referred to by defendant in this connection in the opinion of this court are not applicable under the facts and circumstances shown by the record. The evidence produced on behalf of the plaintiff demonstrated very clearly that plaintiff, at the time he was struck by the timber dropped by defendant's employees, was walking along a well-worn pathway which had been used by the public for a number of years, and that such public use was known to the employees of the defendant. Under such circumstances the defendant company cannot contend that it did not owe a duty to plaintiff other than not to injure him in a wilful or wanton manner. It has been clearly indicated by the Supreme Court of this State

that, even as relates to a track of a railroad company (where some courts have emphasized that public interest in cheap, safe, and rapid transit should be weighed in considering the rights of trespassers or licensees on the tracks), where the railroad company has permitted the public to travel over its track for a considerable period of time and a considerable number of people have availed themselves of such use, the railroad company must keep a lookout for persons on its track (*Bernier v. Illinois Cent. R. Co.*, 296 Ill. 464, 471).

It has, likewise, been established that where a railroad runs through populous portions of a city where people frequently go upon or pass over a track with the knowledge of the railroad company, or for such a length of time that the railroad company is chargeable with knowledge, it is required to keep a lookout for persons under such circumstances and is chargeable with negligence by reason of its failure so to do (*Joy v. Chicago, B. & Q. R. Co.*, 263 Ill. 465, 468).

In the instant case the plaintiff was not on any track, but was on a well-worn and much traveled pathway along the Wabash Railroad right of way, over which the defendant company maintained its viaduct pursuant to contract. The defendant company, as shown by the testimony of its employee, knew of the fact that such pathway was used by the general public, and under all such circumstances defendant company owed a duty to the plaintiff to watch out for him and for members of the public who might be using such pathway, before throwing objects on to such pathway. If, as the evidence tended to show, defendant company failed to keep a proper lookout for plaintiff, notably in the failure of its employees to look to the north, the negligent acts of defendant, through its employees, in failing to keep a proper lookout, coupled with evidence of negligence of the employees in dropping the timber on the pathway where persons might be walking, may furnish

the proper basis for a recovery on part of plaintiff, and the issue of such negligence was properly submitted to the jury.

The substantial evidence of "contributory negligence" in the instant case, urged by defendant, arises from the fact that the defendant's employees shouted, "Look out below," which shouts, plaintiff testified, he did not hear. Under the facts thus presented the question of contributory negligence was one which was peculiarly for the jury, and this court cannot say, under such facts, that the conclusion of the jury that no contributory negligence was shown in this connection was contrary to the manifest weight of the evidence. It cannot, therefore, be said that plaintiff was guilty of contributory negligence as a matter of law.

As a matter of fact, this court feels that the evidence which shows that a heavy 250-pound timber was thrown from the viaduct onto a pathway, which defendant's employees knew was used by members of the general public, is indicative of wilful and wanton conduct which would justify a recovery on behalf of the plaintiff even if he were considered a trespasser. Ill will is not a necessary element of a wanton act, but where the act complained of which causes the injury indicates a reckless disregard of the life or property of others, it is not essential that actual knowledge of the presence of specific persons or property is shown in fixing liability. It is only the knowledge of the probability of the presence of persons who might be injured, which becomes pertinent to characterize the act (*Bremer v. Lake Erie & W. R. Co.*, 234 Ill. App. 105, aff'd 318 Ill. 11). In the instant case the conduct of defendant's employees in casting the heavy timber from the bridge onto the pathway used by members of the public under circumstances which impress this court as being evidence of a reckless disregard of human life and safety, justifies a judgment based on wilful and wanton conduct on the part of the defendant. We are not, however, required

to so conclude under the view which we take of this case, that defendant owed a duty to plaintiff, which, in the state of the evidence before it, the jury was justified in concluding was violated through the negligence of defendant's servants, and that, therefore, plaintiff is entitled to recover by virtue of such negligent breach of duty.

It is next contended by the defendant that the release, which was signed in triplicate by plaintiff, is binding on plaintiff in this action. In connection with such release it is pointed out that the only defense available to the plaintiff is evidence which tends to show that there was fraud in the execution (*Turner v. Manufacturers' Consumers' Coal Co.*, 254 Ill. 187, 193), and that the sufficiency of the release is governed by the law of Missouri where such release was executed (*Woodbury v. United States Casualty Co.*, 284 Ill. 227, 235, 236).

In defendant's contention that the release was binding on plaintiff under the facts, particular emphasis is placed upon the case of *Poe v. Illinois Cent. R. Co.*, 339 Mo. 1025, 99 S. W. (2d) 82, in which case the court emphasized that courts will not protect those who, with full opportunity to do so, will not protect themselves. There was no showing in that case, however, that any effort was made to cover up the release which was taken (as plaintiff testified was done in the instant case), and the court in that case was apparently impressed by the fact that the person signing the release had every opportunity to ascertain what he was doing, and that his story that he thought he was signing a receipt for wages, when there was shown to be no legal obligation to pay wages to him, did not seem consistent with the action of the parties signing and taking the release. In the instant case the plaintiff stated that the understanding between himself and the claim agent had been concluded the day before, and that specific fraudulent representations had been made on that day;

that all that remained to be done when the claim agent returned with his documents, which plaintiff understood to relate only to the hospital bill, was for plaintiff to sign. Under the circumstances the story of plaintiff appears credible in view of the facts in the record and of the direct admissions of the claim agent that he advised plaintiff that defendant was not liable to plaintiff because he was a trespasser and that he would pay him a little money for railroad fare. While others were present at the time of the signing of the release, the only persons present at the time of the conversation the previous day were plaintiff and defendant's claim agent, whose stories of the transaction are contradictory in vital details. Under the circumstances, being denied a view of the witnesses and their apparent candor, this court cannot say that the conclusion of the jury that there was fraud in obtaining the execution of the releases was against the weight of the evidence, and this court will not substitute its judgment for that of the jury and the court below in this connection.

There is nothing in the Missouri case cited by defendant, nor in the cases referred to in such case, which is inconsistent with this conclusion. Neither the Missouri nor the Illinois courts hold that where misrepresentations in prior conferences have established in the mind of the person who is to sign the document, an understanding that it is not a release, the fact that a release is later executed under circumstances where the person signing such release, by bold action, might have determined that it was a release, does not justify the conclusion that such release is binding "willy-nilly" and irrespective of preliminary fraudulent representations to obtain its execution. Under such circumstances the question of fraud in the execution, where the evidence is of the character as was presented in the instant case, is for the jury to determine under all the facts and circumstances.

Defendant likewise contends, in connection with the alleged release, that there was a duty on part of the plaintiff to tender back the $50 received by him before he was entitled to maintain his action. This contention is not sustained by the decisions in this State, but it has been expressly held that where fraud enters into the execution of a contract in a case of this character, a return of the consideration received in the fraudulent attempt to obtain the release, need not be made as a condition precedent to the commencing of the action (*Chicago, R. I. & P. Ry. Co. v. Lewis,* 109 Ill. 120). Defendant likewise contends that plaintiff is barred from alleging any fraud because of the fact that the action was not instituted until 11 months after the release was signed. The case of *Kanter v. Ksander,* 344 Ill. 408, 415, is cited as a precedent for such conclusion. In that case, which we do not believe to be applicable under the facts however, the emphasis is placed on promptness on the part of a plaintiff in taking action after the fraud is discovered. We take it, from an examination of the pleadings and the record in this cause, that the fraud was not discovered until after the defendant's plea setting up the release was filed by the defendant. There can, therefore, be no complaint of delay in the assertion of the fraudulent character of such release on part of plaintiff.

Defendant next complains that the court erred in the giving of the two instructions offered by plaintiff, and in refusing three instructions which were refused after being tendered by defendant. No authorities are cited in support of defendant's contentions in connection with instructions.

The first instruction to which objection is made is the plaintiff's instruction which was given on the question of damages, which was in form as follows:

"The Court instructs the jury that if under all of the other instructions of the Court and evidence in the case, you find the issues in favor of the plaintiff, then

you will assess plaintiff's damages at a sum of money which you find and believe from the evidence will fairly and reasonably compensate him for the injuries sustained by him as a direct result of the occasion mentioned in evidence as occurring on February 28, 1936, as charged in the complaint, and in arriving at your verdict you may take into consideration:

"First, the extent of his said injuries so sustained, and those directly caused thereby;

"Second, the pain of body and anguish of mind, if any, that you find and believe from the evidence plaintiff has suffered and endured as a result of his said injuries so sustained, if any, and directly caused thereby;

"Third, the pain of body and anguish of mind, if any, that you find and believe from the evidence plaintiff is reasonably certain to suffer and endure in the future as a result of his said injuries so sustained, if any, and directly caused thereby;

"Fourth, the probable duration of plaintiff's said injuries, if any, and the extent, if any, to which you find and believe from the evidence same are permanent;

"Fifth, the extent, if any, that you find and believe from the evidence that plaintiff has been disabled and rendered physically unfit to pursue any gainful occupation of which he was capable prior to receiving his said injuries, if any." Defendant objects to the use of the word "endured" and that in its form the instruction tends to pyramid various elements of damage so as to create passion and prejudice in the minds of the jury, and also, to the statement of the "fifth" element of damages. The use of the word "endured" rather than the word "suffer" which is customarily used in instructions of such character, cannot, in the opinion of this court, have tended to mislead the jury, nor does this court feel that the instruction as a whole in specifying any details of damage, or in its form,

was erroneous under the facts and circumstances in the record.

Another instruction objected to on behalf of defendant contained a recital which in effect left the question, as to whether or not plaintiff executed a release of claim, to the jury. The defendant contends that, since the undisputed evidence showed that the plaintiff signed the releases, there was no question on this point to submit to the jury, and that the instruction was further objectionable in that it left to the jury to determine whether plaintiff understood or realized that he was executing a release of his claim. Defendant contends that the question really was whether plaintiff was in a position to understand and realize whether or not he was executing a release of his claim. In answer to this contention it is asserted by plaintiff that where the signature to an instrument is secured by fraud, the instrument never in fact exists (*Chicago, R. I. & P. Ry. Co. v. Lewis, supra*), and that it was, therefore, not improper to employ the language used in the instruction in connection with the signature to the releases. This court is of the opinion that the jury could not have been mislead by the instruction, as a whole, in view of other instructions given and of the evidence in the record.

Defendant's contention that the court erred in failing to give two instructions relating to the use of care on part of plaintiff to ascertain the nature of the document which was submitted to him, and as to his duty in that connection, does not constitute error principally because of the fact that other instructions tendered by defendant on the same points were given by the court and the jury was properly instructed as to such matters in such other instructions.

The third instruction which was offered by defendant purported to tell the jury that where there is negative testimony as to a certain proposition, and afterward, positive testimony is introduced on that proposition,

then the negative testimony loses its probative value. Such instruction was properly refused. While negative testimony may not be of as much weight as positive testimony, the weight and credibility of both are for the determination of the jury (*Noonan v. Maus,* 197 Ill. App. 103).

Defendant finally contends that the verdict in this case is excessive and the product of prejudice and passion on the part of the jury.

The evidence showed that plaintiff was, before his injury, an able-bodied man who had followed the occupation of machinist in construction work for a period of 40 years, and had earned his living, even though he suffered periods of unemployment, until the time of his injuries, since which time he has been unable to work. All the medical evidence submitted showed definitely that plaintiff suffered serious and permanent injuries; that he has a compressed fracture of the spine which has converted him into a "humpback," and that his condition is such that he must wear a brace or plaster cast the remainder of his life; that he will, therefore, never be able to work at manual labor again—the only kind of work plaintiff had ever pursued. Under the circumstances, this court does not feel that it is justified in substituting its judgment for that of the jury, and will not interfere with the verdict in this case.

There being no reversible error in the record, the judgment of the circuit court of Madison county is affirmed.

*Affirmed.*