Charles REID, a minor, by Lindell REID, his father and next friend, Plaintiff–Appellant,

v.

NORFOLK & WESTERN RAILWAY COMPANY, a Virginia Company, Defendant–Appellee.

No. 97–2677.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1998.

Decided Oct. 8, 1998.

Kurt E. Reitz (argued), Thompson & Coburn, Belleville, IL, Russell Kenneth Benton (argued), Delano Law Offices, Springfield, IL, for Plaintiff–Appellant.

Thomas W. Alvey, Jr., Thompson & Coburn, Belleville, IL, for Defendant–Appellee.

Before CUMMINGS,* COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

In this diversity suit, 15-year-old plaintiff-appellant Charles Reid ("Reid"), through his father, sued the defendant-appellee, Norfolk and Western Railway Company ("N & W") alleging that Reid sustained personal injuries as a result of the conduct of N & W and its agents, when he was struck by a freight train owned by N & W while trespassing on train tracks owned by N & W. The district court entered summary judgment in favor of N & W, finding that under Illinois law, Reid was not a "permissive user" of the tracks, and thus N & W did not owe Reid a duty of "ordinary care," but only a duty to refrain from engaging in "wilful and wanton" conduct, and N & W's conduct was not wilful and wanton. Reid appeals the grant of summary judgment. We affirm.

## I. BACKGROUND

On August 4, 1995, between noon and 1:00 p.m., 15-year-old Charles Reid was walking through his neighborhood in Springfield, Illinois on his way to get a haircut at the "Mr. Fresh Barber Shop." At some point during his trek, Reid walked up onto railroad tracks owned and operated by N & W.[1] The portion of track that Reid was standing upon at the time of the accident runs behind various commercial enterprises in Springfield, between the Fifth and Sixth street viaducts over which the train track traverses. There is a slight curve in the track between the Fifth and Sixth street viaducts. The defendant railroad and its employees allege that there were nearby warning signs in place on August 4, 1995, which read "Extremely Dangerous - No Trespassing - Violators will be Prosecuted - Private Property." Plaintiff, on the other hand, provided affidavits from nearby residents who attested that they had never seen these signs, and plaintiff states that these signs were not in place on August 4, 1995. Regardless of whether these signs were or were not present at the accident scene on the date in question, this area of track clearly was not an authorized track crossing point such as a sidewalk or street.

At the same time Reid ventured onto the track, a freight train owned by N & W was traveling east on the same set of tracks

---

* Judge Walter J. Cummings did not participate in the decision of this case though he sat on the panel.

1. It is unclear whether Reid was walking down the tracks, simply standing on the tracks, or otherwise. At one point in his deposition, Reid testified that he "got up on" the tracks, and does not remember anything beyond that point. Reid also stated that he recalls "getting ready to cut over the tracks" but nothing further. Because there were no witnesses to the accident, Reid's barren recollections represent the extent of testimony on this issue.

toward Decatur, Illinois. The train consisted of a locomotive and two tank cars, and was operated by four N & W crew members who had traveled the Jacksonville-Decatur route daily for approximately five years. The train struck Reid, and he was subsequently found lying near the track by employees of a local business. There were no witnesses to the accident, including the crewmen, who did not see Reid, and did not hear any sound suggesting the train had struck an object or a person. Reid suffered serious injuries necessitating the amputation of his right hand.

On January 11, 1996, Reid filed suit against N & W in the Circuit Court of Sangamon County, Illinois. After a bit of legal sparring between the parties at the pleadings stage, Reid filed a Second Amended Complaint and alleged two counts under Illinois common law. Initially, he alleged N & W (through its employees) operated the freight train negligently. Secondly, Reid averred that N & W operated the train in a wilful and wanton manner. Specifically, Reid claimed N & W acted negligently, and wilfully and wantonly, primarily by operating the train at an excessive speed, failing to keep a proper lookout, and failing to warn by sounding its whistle.

N & W removed the case to federal court on grounds of diversity jurisdiction. Discovery followed, including depositions of the N & W crew members. Engineer Jerry Floyd testified he had previously seen persons around the track at the accident site, but that on the day of the accident, he observed nobody near the track as he rounded the curve at the Fifth Street viaduct. Conductor Patrick Riley stated that he saw people on the track "rarely or occasionally," but specifically recalled looking out the front windows of the locomotive at the alleged time and location of Reid's accident, and not spotting anyone on the tracks. Brakeman Timothy Roach testified he was looking at the track in the area rounding the curve and saw only "clear track," but acknowledged he may have taken his eyes off the track following the curve. Because none of the crew members saw or heard Reid, they saw no necessity to sound the train's whistle as it allegedly approached him. Mr. Floyd also testified that railroad regulations require the crew to sound the whistle when they see an individual on the tracks, but there is nothing in the record to indicate the whistle must be activated when rounding or approaching the curve if no one is spotted on the tracks.

Following discovery, N & W moved for summary judgment. It argued, among other things, that Reid was a trespasser and thus, N & W did not owe Reid a duty of "ordinary care" as alleged in Count I of Reid's amended complaint ("the negligence count"). With respect to Count II ("the wilful and wanton count"), N & W argued for summary judgment against Reid's allegations of wilful and wanton conduct because he failed to offer proof that N & W's actions in the operation of the train could be classified as wilful and wanton.

In response, Reid did not dispute the defendant's characterization of him as a trespasser. Rather, he pointed to various exceptions to the characterization of a trespasser for purposes of defining the appropriate standard of care, including the "permissive user" exception, under which N & W would have owed Reid a duty of ordinary care if Reid was a "permissive user" of the property (the particular area of track). Thus, Reid argued that because he was a "permissive user" of the railroad track, the proper duty was one of ordinary care, and the trial court committed error because material issues of fact exist regarding whether N & W fulfilled its duty of ordinary care towards Reid.

The district judge examined each count separately. With respect to the negligence count, the judge noted that Reid did not dispute the defendant's characterization of him as a "trespasser," and found Reid was not a "permissive user." The court concluded N & W owed Reid only a duty to refrain from wilfully and wantonly injuring him, not a duty of ordinary care as alleged in the negligence count. With respect to the wilful and wanton count, the court found that because Reid "admits that none of the four crew members saw or heard [him] on the railroad tracks prior to the accident, ... [N & W] did not know of [his] presence on the tracks, [and] could not have [acted wilfully and wantonly]." Based upon the totality of this reasoning, the court granted N & W's motion for summary judgment on both counts and entered a final judgment against Reid. Reid appealed. We affirm.

## II. ISSUE

Reid appeals the district court's grant of summary judgment and advances a sole issue for consideration. He contends that the district court incorrectly concluded that Reid was not a "permissive user" of N & W's property for purposes of establishing the appropriate standard of care owed to Reid by N & W.

## III. DISCUSSION

### A. *Standard of Review*[2]

■ We review *de novo* the district court's grant of summary judgment. *Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 612 (7th Cir.1993). Summary judgment is appropriately granted if the party seeking summary judgment demonstrates through its pleadings and other record materials filed with the court—pleadings, depositions, answers to interrogatories, admissions on file, and affidavits—that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met its burden, the nonmovant must set forth specific facts showing a genuine issue for trial, and may not rely upon mere allegations or denials of the pleadings. *See* Fed.R.Civ.P. 56(e); *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1031 (7th Cir.1998). In determining whether a genuine issue of material fact exists, we consider the evidence in the light most favorable to the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### B. *Whether Reid was a "permissive user" for purposes of establishing the appropriate standard of care owed to Reid by N & W.*[3]

■ In order to state a cause of action for negligence, a plaintiff must establish "the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Ward v. K mart Corp.*, 136 Ill.2d 132, 140, 143 Ill.Dec. 288, 554 N.E.2d 223, 226 (1990). The first element, the existence of a duty, is a question of law to be decided by the court. *See Rodriguez v. Norfolk & Western Ry. Co.*, 228 Ill.App.3d 1024, 1037–38, 170 Ill.Dec. 708, 593 N.E.2d 597, 607 (1992). Under Illinois law, the nature of the duty a landowner owes to an entrant upon its land depends upon whether the entrant is a trespasser, licensee or invitee. *See Miller v. General Motors Corp.*, 207 Ill.App.3d 148, 153–54, 152 Ill.Dec. 154, 565 N.E.2d 687, 690 (1990).[4] The question of status may be determined as a matter of law if there are no factual questions presented. *Lorek v. Hollenkamp*, 144 Ill.App.3d 1100, 1102, 99 Ill. Dec. 232, 495 N.E.2d 679, 681 (1986) (citation omitted). Here, Reid does not dispute N & W's contention that he was a trespasser when he walked onto the railroad tracks.

■ Generally, "a railroad company owes no duty to a trespasser except to refrain from wantonly or wilfully injuring him, and to use reasonable care to avoid injury to him after he is discovered to be in peril." *Rodriguez*, 228 Ill.App.3d at 1038, 170 Ill. Dec. 708, 593 N.E.2d at 607; *see also, Lee v. Chicago Transit Auth.*, 152 Ill.2d 432, 447, 178 Ill.Dec. 699, 605 N.E.2d 493, 499 (1992).[5] The district court found that Reid failed to

---

**2.** We apply the federal summary judgment standard even though applying substantive state law in a diversity case. *See, e.g., Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir.1997); *Mayer v. Gary Partners & Co.*, 29 F.3d 330, 335 (7th Cir. 1994).

**3.** A federal court exercising diversity jurisdiction must consult the choice-of-law rules of the state in which the court sits to determine which state's substantive law should apply. *See GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995). In dealing with choice of law issues in the area of tort, Illinois courts apply the law of the state in which the tort occurred unless another state has a more significant relationship to the occurrence or the par-

ties. *See Walters v. Maren Eng'g Corp.*, 246 Ill. App.3d 1084, 1090, 186 Ill.Dec. 931, 617 N.E.2d 170, 173 (1993). Here, the district court correctly applied Illinois law because Reid's accident occurred in Illinois and no other state has a more significant interest in the accident or the parties.

**4.** Effective in 1984, Illinois' Premises Liability Act abolished the distinction between a landowner's duty toward licensees and invitees. 740 ILL. COMP. STAT. 130/2 (West 1995).

**5.** An individual acts wilfully or wantonly if he or she displays a reckless disregard for the safety of others after knowledge of impending danger.

present pleadings, affidavits or other documents demonstrating that N & W acted wilfully and wantonly. Specifically, the trial court found that "[Reid] admits none of the four crew members saw or heard [him] on the railroad tracks prior to the accident. Because defendant, through its employees, did not know of [Reid's] presence on the tracks, defendant could not have exhibited a reckless disregard for [Reid's] safety." [6] Reid does not dispute this finding on appeal. Rather, Reid asserts that Illinois courts recognize specific situations in which a landowner owes the duty of ordinary care to a trespasser. One of these is the "permissive use" exception, which Reid argues is applicable here.[7] Reid bears the burden of establishing, with more than mere allegations or denials, that the exception should apply. *See Rodriguez*, 228 Ill.App.3d at 1040, 170 Ill. Dec. 708, 593 N.E.2d at 608.

The permissive use exception comes into play when the landowner permits regular use of its land for travel. *Id.* A landowner may be found liable if and when continued toleration of the trespass amounts to permission to make use of the land, so that the plaintiff then becomes a licensee who is owed an ordinary duty of care. *See Miller*, 207 Ill.App.3d at 155, 152 Ill.Dec. 154, 565 N.E.2d at 691. Specifically, the exception requires that a landowner exercise "ordinary care" towards trespassers if (1) the trespasser is a frequent trespasser (2) in a limited area (3) where the landowner knows or should know of the trespasser's constant intrusion. *See, e.g., Lee*, 152 Ill.2d at 447, 178

Ill.Dec. 699, 605 N.E.2d at 498–499; *Bernier v. Illinois Cent. R.R. Co.*, 296 Ill. 464, 471, 129 N.E. 747, 750 (1921). Accordingly, Reid could state a claim for negligence worthy of jury consideration only if he can first set forth specific facts demonstrating that he frequently trespassed upon this portion of N & W track, that the particular location constitutes a "limited area," and that N & W knew or should have known of Reid's constant intrusions.

Initially, Reid failed to offer any proof that he frequently trespassed on the track between Fifth and Sixth streets. Reid does offer affidavits of community residents making general allegations that people frequently trespass on or around the tracks between Fifth and Sixth streets ("I have noticed numerous kids play (sic) in the area around the railroad tracks and cross (sic) it frequently" (Aff. of G. Norman); "it was not unusual for kids to play [by the tracks]" (Aff. of M. Hylton); "I have seen children ride their bikes along these train tracks" (Aff. of C. Vicari)). Use of this general area among other individuals, not including the plaintiff, does not bolster Reid's claim. As Illinois courts have held, "[p]revious use ... by other members of the public is immaterial to plaintiff's case because it cannot be relied on to establish that he was on the premises as a result of an implied invitation." *Rodriguez*, 228 Ill.App.3d at 1042, 593 N.E.2d at 610 (*citing Briney v. Illinois Central R.R. Co.*, 401 Ill. 181, 187, 81 N.E.2d 866, 869 (1948)). Reid fails to submit any evidence whatsoever that he had walked this particular area of

---

*See Miller*, 207 Ill.App.3d at 161, 152 Ill.Dec. 154, 565 N.E.2d at 694.

**6.** The court's reference to Reid's admission is based on the parties' Statement of Undisputed Facts submitted at the summary judgment stage in accordance with local rules. N & W alleged "none of the four crew members upon the N & W train saw or heard Charles Reid upon the railroad tracks." In response, Reid admitted the truth of this statement.

**7.** The other exceptions pertain to young children whom the landowner foresees intruding and being incapable of appreciating the risk involved, and discovered trespassers. *See Rodriguez*, 228 Ill.App.3d at 1039, 170 Ill.Dec. 708, 593 N.E.2d at 607. The district court found Reid failed to meet either exception. With respect to the exception for "young children" who are "incapable

of appreciating the risk involved," the trial judge found Reid, who was nearly 16-years-old at the time of the accident, "hardly qualifies as a small or a young child." Indeed, "[i]nfants have no greater right than do adults to go upon the land of another" because "[t]heir minority, in and of itself, imposes no duty upon an occupier of land to either expect them or prepare for their safety." *Mt. Zion Bank & Trust v. Consol. Communications, Inc.*, 169 Ill.2d 110, 116, 214 Ill.Dec. 156, 660 N.E.2d 863, 868 (1995). The trial court found "based upon [Reid's] age, abilities, and experience, [he] was capable of appreciating the risks involved which allegedly led to his injuries." Reid does not allege or brief the applicability of either the first or second exception on appeal, thus they are deemed waived. *See Trustees of Pension, Welfare and Vacation Fringe Benefit Funds of IBEW Local 701 v. Favia Elec. Co.*, 995 F.2d 785, 787, n. 3 (7th Cir.1993).

track in the past. In fact, the sole evidence presented on either side of this issue consists of a "Summary of Incident Reports" submitted by N & W, which demonstrates that Reid had never been reported as trespassing on the tracks except on the date of the accident. We are confident that Reid would have provided record support if he had frequently trespassed on the relevant area of track, but he proffered none.

Secondly, Reid fails to support his contention that the area of track between Fifth and Sixth streets is a "limited area." Illinois courts have seldom been called upon to interpret this phrase, but one Illinois court has defined "limited area" in this context to mean "an area of small size." *See Miller,* 207 Ill.App.3d at 155, 152 Ill.Dec. 154, 565 N.E.2d at 691. Black's Law Dictionary defines "limited" as: restricted, bounded, prescribed, centered within positive bounds; restricted in duration, extent or scope. (5th ed.1979). Based upon this definition, Reid argues that if boundaries exist that give the trier of fact a set line within which to fix its inquiry, the area inside these boundaries could qualify as limited, and that the rails of the train tracks constitute finite boundaries. The trial court found that "the limited area alleged by [Reid] is a city block ... a 'limited area' must be more narrow than a city block." In fact, under the definition Reid provides, every inch of railroad track running through any populated area might very well qualify as a "limited area." Illinois courts have never given the phrase so broad a reading in this context.

Rather, a limited area almost always involves a well-traveled path used by members of the public. *See, e.g., Morgan v. New York Cent. R.R. Co.,* 327 Ill. 339, 158 N.E. 724 (1927) (well-traveled path used by members of the public and railroad company's employees qualifies as limited area); *Bernier v. Illinois Central R.R. Co.,* 296 Ill. 464, 129 N.E. 747 (1921) (cinder path used for years by persons crossing from one side of town to another); *Pellegrini v. Chicago, Rock Island and Pacific R.R. Co.,* 91 Ill.App.3d 1091, 47 Ill.Dec. 610, 415 N.E.2d 615 (1980) (well-worn path used by neighborhood residents as a shortcut); *McDaniels v. Terminal R.R. Ass'n of St. Louis,* 302 Ill.App. 332, 23 N.E.2d 785 (1939) (well-trodden path used by

public, including school children, qualifies as limited area). In fact, Reid concedes that "the most frequent mention in case law of [a "limited area"] is the mention of 'beaten paths' ... along railroad tracks." Reid has not alleged, nor has he offered affidavits or other record materials demonstrating, that at the time of his accident (or any time prior) he walked upon a "path" at all, let alone a "beaten path." Even accepting Reid's affidavit submissions as true, it is not enough that persons persistently *roamed at large* over the land. *See Benamon v. Soo Line R.R. Co.,* 294 Ill.App.3d 85, 93, 228 Ill.Dec. 494, 689 N.E.2d 366, 372 (1997) (citation omitted) (emphasis supplied).

■ Finally, no genuine issues of material fact exist regarding whether N & W had knowledge, or should have had knowledge, of constant intrusions by Reid into the relevant area. Reid relies on affidavits of nearby residents and business people who state they have seen both adults and children on and in the vicinity of the tracks between Fifth and Sixth streets, and presumes that N & W train operators must have seen the same. These affidavits generically demonstrate that members of the community had observed people near the tracks on undefined occasions, at undefined times, for undefined periods. There is no link between the affiants' allegations and any knowledge imputed to N & W Railway Company or its employees. More importantly, the most reliable evidence on the issue of N & W's knowledge is the sworn testimony of the train crewmen who had run the Jacksonville-Decatur route for the five years preceding the accident. Conductor Riley testified he had seen people on or in the vicinity of the track between Fifth and Sixth streets "occasionally" and opined that it is "sort of rare to see somebody along in there." Engineer Floyd testified he has seen people on the track "not that frequent(ly)" and has seen children around the tracks, but "not very often." Under Illinois law, knowledge of occasional intrusions is insufficient to establish the degree of constant intrusion necessary to raise the landowner's standard of care toward a trespasser. *See Benamon,* 294 Ill.App.3d 85, 228 Ill.Dec. 494, 689 N.E.2d 366 (testimony that engineer saw children on tracks on three or four occasions fails to establish constant in-

trusion). It is also clear, as the trial court found, that none of these crewmen had seen Reid on the tracks before. This fact is supported not only by their respective testimony, but by the railroad's "Summary of Incident Reports" which demonstrates that Reid had never previously been reported for wandering the tracks between Fifth and Sixth streets until the day of his accident. Based upon the record before us, we also hold that Reid's pleadings, affidavits and documents on file do not furnish proof that N & W had either actual or constructive knowledge of constant intrusions onto the train track between Fifth and Sixth streets in Springfield, Illinois.

Absent proof of Reid frequently trespassing through a limited area, and the railway or its agents possessing knowledge of Reid's constant intrusions, the "permissive use" exception does not apply. Because Reid's pleadings, affidavits and documents on file failed to bring his claim within the "permissive use" exception, N & W owed Reid only a duty to refrain from wanton and wilful conduct. We agree with the trial court's ruling in finding that no genuine issues of material fact existed with respect to Reid's negligence claim. The judgment of the district court is

AFFIRMED.