## J. W. Robertson, Appellee, v. New York Central Railroad Company, Appellant.

CULBERTSON, P. J., dissenting.

October term, 1943.
Rehearing denied February 23, 1944.

Heard in this court at the
Opinion filed October 30, 1943.

WHEATLEY & COMBE, of Harrisburg, for appellant; SAMUEL W. BAXTER, CHARLES P. STEWART and THOMAS A. McCORMACK, all of Cincinnati, Ohio, of counsel.

GORDON FRANKLIN and STONE & FOWLER, all of Marion, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

This cause is here on an appeal from a judgment of the circuit court of Saline county in favor of plaintiff appellee in the sum of $1,500. The judgment entered therein is a result of a suit brought by the appellee (hereinafter referred to as plaintiff) against the defendant appellant, herein (hereinafter referred to as the defendant) to recover damages in the sum of $2,600 for personal injuries, to the plaintiff himself, and $300 damages to his truck, as a result of a collision between the north bound local freight train, of the defendant and the plaintiff's truck. The truck was being operated by the plaintiff, and the accident occurred at the defendant's railroad crossing in the small village of Stonefort, Saline county, Illinois, at noon time on February 2, 1942.

The complaint filed by the plaintiff contained the usual charges of negligence, namely, excessive speed; failure to blow a whistle and ring bell; failure to keep a proper lookout, etc., and there were two counts charging the defendant through its servants with certain wilful and wanton acts or omissions, and more specifically that the defendant through its engineer, then and there seeing approaching said crossing the truck in which the plaintiff was then and there riding, wilfully and wantonly propelled and drove his said locomotive and train of cars toward and upon said crossing without blowing a whistle or ringing a bell and at an excessive rate of speed and without keeping a proper lookout for persons and vehicles approaching said crossing. The defendant's answer to this complaint was a general denial of all charges of negligence and wilful and wanton misconduct, and in addition thereto averred that the proximate cause of the plaintiff's injuries was his own contributory negligence.

Briefly, the trial of this case developed the following factual situation; the plaintiff was the owner of a 1937 model panel Chevrolet truck which had just been

loaded with 24 sacks of flour at his general store which was located in the village of Stonefort, Illinois. This store was situated on the east side of U. S. Highway No. 45, an 18 foot slab of concrete running in a northeasterly and southwesterly direction through said village. This store was located adjacent to Chestnut street which ran east and west along the north side of said store and on west across the aforementioned highway No. 45 and still further west some 95 feet intersecting two tracks of the defendant railroad company. The plaintiff, upon leaving his store, drove his truck into Chestnut street and turned to his left and proceeded west to Route 45 and stopped at a stop sign which was located about 15 feet east of said highway, to let a Ford automobile go by. He then proceeded across said highway and westwardly on Chestnut street in second gear until he reached the defendant's railroad tracks where he was struck by a daily local freight train of the defendant which consisted of an engine and about 17 freight cars which was proceeding in a northerly direction. At the point of the collision there were two sets of tracks, the east track being the main track while the west one was used for switching purposes.

Chestnut street at the point in question is about 20 feet wide, is constructed of gravel and dirt and at the time of the accident was covered with many holes 6 to 12 inches deep making the surface very rough. About 15 feet to the east of the tracks was located the usual cross-buck warning signal.

The plaintiff testified that the last time he looked southwardly or in the direction of the on coming train was when he was 40 feet east of the east rail of the main track, and that he did not see or hear a train coming, and that he then looked north and when he turned back he was struck. He further testified that he never stopped or slowed down his truck which was traveling from seven to ten miles per hour. There

was nothing in the mechanical condition of the truck or the condition of the weather that could be designated a contributing cause of the accident. The plaintiff also testified that he was familiar with Chestnut street, he having owned and operated the store from whence he started for more than two years.

Without burdening this opinion with a detailed description of all the physical objects surrounding the scene of the accident, suffice it to say that the undisputed testimony discloses that from a point 50 feet east of the east rail of the main track and from the center of Chestnut street, one can see a man standing in the middle of the main track 208 feet south of the center of Chestnut street, and that 40 feet east one can see the same object 309 feet; 30 feet east that object is visible 608 feet south; 25 feet east one can see as far as the whistling post which is 1,800 feet south. At a point 20 feet east of the said main track one can see as far south as the human vision will permit. The record also discloses the fact that a truck similar to the one of the plaintiff's, driven at the rate of 10 miles per hour, with good brakes, and on a road similar to the one in question, can be stopped within the distance of 8 feet upon the application of the foot brakes and can be stopped in its tracks if the emergency brake is applied. The plaintiff was a young man 34 years of age, in good health and with unimpaired faculties of seeing and hearing. He received as a result of the accident serious injuries consisting of six fractured ribs, lacerations on the back of his head four inches in length, a fracture of the exterior condyle of the left humerus, a sprained right ankle and considerable shock and he is now still afflicted with a crooked left arm, stiff in the elbow, which is a permanent condition.

On behalf of the plaintiff there was evidence that the train was traveling at an unusually fast rate of speed, that there was no whistle blown nor bell rung. On behalf of the defendant the fireman and engineer

testified that the bell rang continuously from 1,800 feet south of the crossing in question and that the station whistle was blown 300 feet south of that point, and that all crossing whistles were blown right up to and including Chestnut street, the scene of the accident. The engineer testified that he saw the plaintiff's truck first when it was about 40 feet east of the main track, and that it was traveling very slowly, from 5 to 10 miles per hour and that when the truck was about 15 feet east of the tracks, he saw that an accident was inevitable and applied the emergency brakes. At the time the brakes were applied the front of the train was only about 15 feet south of the center of Chestnut street. Several witnesses on behalf of the defendant in addition to the train crew testified that the train was traveling at its usual rate of speed namely 30 to 35 miles per hour. On behalf of the plaintiff furthermore there was testimony that there were certain obstructions immediately north of Chestnut street on the east side of the main tracks and near thereto, so as to obstruct the plaintiff's vision to the north, and further when the plaintiff was from 20 to 40 feet to the east of the main tracks he met a car going east which traveled on the south half of the highway and that said automobile obstructed plaintiff's vision to the south. Plaintiff's counsel argues with some seriousness that since this other car passed over the crossing safely that plaintiff perhaps was deceived into thinking that he could do likewise unharmed. Appellant in his reply brief concluding that such was a childish argument quoted from First Corinthians 13th Chapter, 11th Verse, "When I was a child I spake as a child, I understood as a child, I thought as a child, but when I became a man I put away childish things." Both the plaintiff and defendant in their briefs devote considerable space in an effort to characterize the testimony of opposing witnesses as negative but we are of the opinion that there was about as much testimony

of a negative and positive character on one side as the other and that on all issues of fact presented to the jury, it was peculiarly within the jury's province to determine the credibility of those witnesses and the weight to be attached thereto.

The defendant strenuously insists that the trial court erred in not having directed a verdict on counts one and two charging ordinary negligence at the close of the plaintiff's case, since the proof clearly showed that the plaintiff was guilty of contributory negligence. We are of the opinion that the defendant should be sustained in this view. The proof conclusively shows that when the plaintiff was 40 feet from the crossing he could and should have seen the approaching train, that it was well within his range of vision at that time. The reasoning in the case of *Greenwald v. Baltimore & Ohio R. Co.*, 332 Ill. 627, in our opinion is sound and logical and is peculiarly applicable to this case. Quoting from the *Greenwald* case on page 631, the court said:

"The rule has long been settled, in this State, that it is the duty of persons about to cross a railroad track, to look about them and see if there is danger, and not to go recklessly upon the track, but to take proper precaution to avoid accident. It is generally recognized that railroad crossings are dangerous places, and one crossing the same, must approach the track with the amount of care commensurate with the known danger, and when a traveller on a public highway, fails to use ordinary precaution, while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence."

The court again, on page 632 in the same case said:

"One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look, or in crossing a railroad track in reliance upon

the assumption that a bell will be rung or a whistle
sounded. No one can assume that there will not be a
violation of the law, or negligence of others, and then
offer such assumption as an excuse for failure to exer-
cise care. The law will not tolerate the absurdity of
allowing a person to testify that he looked, but did
not see the train, where the view was not obstructed,
and when, if he had properly exercised his sight, he
must have seen it.''

And again, the court said in the same opinion:

"In this case, it seems clear, from the testimony of
appellant's witnesses, taken in its most favorable
light, that appellant's agents, had they continued to
look toward the southeast, after going upon the tracks,
would have seen the approaching train in ample time
to have avoided the collision. Appellant's evidence,
most favorable to him, is that when standing on the
first, or south track, which the testimony shows is from
30 to 40 feet south of the third track, on which the col-
lision occurred, one can see at least 200 feet in the di-
rection from which the train was approaching. Neither
of appellant's servants testified that after going upon
the first, or south, track, they again looked toward the
southeast, until they were crossing the second track.
It seems clear that had they done so, the collision would
have been avoided. They testify that they heard no
sound of warning, such as the blowing of a whistle or
the ringing of a bell. The duty resting upon one who
crosses a railroad track is not only to listen, but to
look, and the fact that no bell was rung, or whistle
blown, if such was the fact, would not excuse him from
using due care to look in the direction from which a
train might be coming, and, in this case, had appel-
lant's servants done so, it seems clear that the colli-
sion would have been avoided.''

We are therefore of the opinion that the trial court
erred in not having directed a verdict for the defend-

ant on counts one and two at the close of the plaintiff's case.

Next let us consider whether the defendant was guilty under the third and fourth counts of the complaint charging wanton and wilful misconduct. The engineer testified that when his engine was about 280 feet south of the crossing in question, he saw the plaintiff approaching traveling in a westward direction at a very slow rate of speed. By the very nature of the movement of his train and the vehicle, he would reasonably know that if the truck and the train continued at their respective rates of speed they would arrive at the crossing at the same time. It furthermore would not be unreasonable for the engineer to know that if he did not give any warning of any kind that the driver of the truck might not know of the approach of the train. Notwithstanding this most perilous situation, the engineer continues on, entirely heedless of the safety of the truck driver and does not blow his whistle nor ring a bell. At least the above factual situation is developed if the jury believed the plaintiff's witnesses. We do not think that it requires a citation of authorities to sustain the view that the foregoing presents a clear question of fact for the jury to determine on the wanton and wilful issue. There was considerable positive evidence that neither warning was given, notwithstanding the appellant's continued insistence that there was none. Authority for the recovery by a plaintiff in a case of this kind on the wanton and wilful issue can be found in the case of. *Bernier v. Illinois Cent. R. Co.*, 296 Ill. 464, and *Brown v. Illinois Terminal Co.*, 319 Ill. 326. In the latter case where the factual situation is quite similar to the one at bar the court had this to say:

"The engineer saw the plaintiff approaching the road, with his back to the east, until he turned south on the crossing, but assuming plaintiff would stop before reaching the track neither slackened speed nor

sounded a warning, and the conductor, who was on the oil tank car, says he never saw plaintiff until he was on the track. Plaintiff was only a few feet from the railroad track when he drove on the highway. The engineer saw him before he reached the highway and must have known he could not pass over the railroad track before the train arrived at the crossing. He assumed plaintiff would stop until the train had passed before passing over the track. Plaintiff should have done so if he was warned or knew of the approaching train, but it was the duty of defendant's servants to give warning of the train's approach to the crossing by ringing the bell or blowing the whistle. That plaintiff ought to have known of the approach of the train did not relieve defendant of the duty of warning him of its approach. Under the decisions of this court, whether injury was the result of the willful and wanton conduct of defendant was, under all the evidence, a question of fact for the jury, and the court did not err in refusing to direct a verdict as to the counts charging willfulness and wantonness. In *Chicago, Burlington and Quincy Railroad Co. v. Murowski,* 179 Ill. 77, the court said whether failure to ring a bell or sound a whistle before starting a train within the city limits, in violation of the statute or an ordinance, is willful or wanton, is a question of fact for the jury, and it is not the province of a court to say, as a matter of law, that the omission was not willful. Defendant's railroad had only a few miles of track, wholly in Madison county. Its business was to receive loaded cars from industries along its line and deliver them to a connecting carrier for shipment to destinations, and also to receive and deliver empty cars consigned to the industries it served. It therefore did not run trains on regular schedule, which would give some notice to the public.

''We do not think that under all the circumstances shown by the proof the court would have been war-

ranted in deciding, as a matter of law, that there was no evidence tending to prove the charge of willfulness and wantonness. If we are correct in this conclusion it is unnecessary to discuss the question argued in the briefs whether plaintiff was guilty of contributory negligence.''

Appellant relies mainly upon the case of *Provenzano v. Illinois Cent. R. Co.*, 357 Ill. 192, as authority for its contention that the failure of defendant's servants to ring a bell or blow a whistle was mere negligence and cannot support a charge of wantonness or wilfulness. The court in that case made the observation that there was no positive evidence that the warnings by the whistle or bell were not given and surely we are not to understand the law on the subject to be that no matter what the circumstances are that surrounds the wilful violation of a statute or the wilful omission to perform a duty that there can be no case of wanton and wilful misconduct. We are therefore of the opinion that the trial court did not err in entering judgment for the plaintiff and against the defendant in the sum of $1,500. *Greene v. Noonan*, 372 Ill. 286. At page 291 the court announces the following rule:

''That where the complaint consists of several counts, one or more of which state a cause of action the gist of which is malice, with others based upon negligence only, and the verdict is general, without specifying the count on which it is based, the presumption is that the verdict is based upon a cause of action of which malice is the gist.''

Applying this to the present situation the verdict of the jury is presumed to be based upon the third and fourth counts, and those being the ones which we hold warrants recovery the judgment should be affirmed. Some criticism is made by the appellant of certain instructions but they are directed mainly at propositions of law that pertain to the first and second counts, and

since we have held that there can be no recovery on the negligence counts in this case it is unnecessary to consider the merits of those contentions.

*Judgment affirmed.*

Mr. Presiding Justice Culbertson dissenting: I must dissent from the conclusion of the majority opinion as to the third and fourth counts of the complaint, charging wilful and wanton misconduct. I do not believe that the facts in this record justify a finding that the engineer was guilty of wilful and wanton misconduct, or that a question of fact was presented for the jury to determine such issue.

The factual situation in this case is not similar, in my judgment, to that found in *Brown v. Illinois Terminal Co.*, 319 Ill. 326, referred to in the majority opinion, in view of the physical situation of the crossing and the testimony of some of the witnesses that warning signals were given, particularly to the effect that the bell rang continuously from 1,800 feet south of the crossing, and that the whistle was blown 300 feet south of that point, and that all crossing whistles were blown, up to and including Chestnut street, the scene of the accident, coupled with the testimony of the engineer that when he first saw the plaintiff's truck it was about 40 feet east of the main track and was traveling very slowly and that when he saw that an accident was inevitable he applied the emergency brakes.

In my judgment, based upon the precedents in the Supreme Court of this State (*Provenzano v. Illinois Cent. R. Co.*, 357 Ill. 192), a verdict should have been directed as to the third and fourth counts of the complaint and the judgment entered in the circuit court should have been reversed in this court.