**Evelyn R. Pope, Eva J. McClure Bell and Turus H. Davis, Appellants, v. Illinois Terminal Railroad Company, Appellee.**

**Gen. No. 9,491.**

Opinion filed May 28, 1946.  Released for publication June 24, 1946.

JAMES A. DOOLEY, of Chicago, for appellants.

LE FORGEE & SAMUELS, of Decatur, for appellee.

MR. JUSTICE WHEAT delivered the opinion of the court.

This is a personal injury action arising out of a collision between an automobile, in which the plaintiffs appellants were riding as guests, and a train operated by defendant appellee.  The damages of the plaintiff, Evelyn R. Pope, were fixed by the jury in the sum of

$12,500, those of plaintiff, Eva J. McClure Bell, in the sum of $500, and those of the plaintiff, Turus H. Davis, in the sum of $500. At the close of all the evidence, defendant moved for directed verdicts, ruling on which was reserved by the court. Thereafter, defendant successfully moved for judgments notwithstanding the verdicts, and, in the alternative, for a new trial, from which action of the circuit court this appeal has been taken.

The occurrence, on which this suit is based, happened on November 26, 1939, about 12:30 a. m., near the 2500 block of North Broadway street in the city of Decatur, Illinois. The three plaintiffs and the driver of the car, Carol Woodruff, had been in a Decatur tavern, at which place, according to plaintiff, Mrs. Bell, she drank one drink of gin; Mrs. Pope had one drink of whiskey; Mr. Davis and the driver, Woodruff, each had one bottle of beer. About midnight, they entered Woodruff's car and drove northerly, with the intention of going to the "121 Club" to dance. As they proceeded north on Broadway, immediately before the accident, the night was clear, the pavement dry, the windshield clean, and the bright lights of the car were on. Broadway was a cinder covered street for at least 800 feet south of the scene of the accident, without curbs, and extending generally in a northerly and southerly direction. The north and south tracks of defendant railroad ran parallel to and along the westerly side of the street. The street was about 18 to 20 feet wide east of the east rail of the tracks, and the space between the rails, at and south of the scene of the accident, was filled with cinders to the approximate street grade, and (according to plaintiffs' witnesses) was used by the public as a part of the street. North of the location of the accident, the railroad maintained an east and west track, and, to permit directional switching, this track had two branches or switch tracks, both being west

of the north and south track, one curving to the northeast to make a junction with the north and south track and one curving to the southeast to make a similar junction, forming what is termed a "Y." A trolley wire, with supporting bracing wires attached to poles, extended above all tracks. Just prior to the collision, defendant was operating a train, consisting of an electric locomotive, 10 cars, and a caboose, which had proceeded west to a point where it was backed southeasterly on the south branch of the "Y," with the intention of backing entirely on the north and south track and then proceeding northerly. When the train was on the southerly branch of the "Y" and the engine had cleared the switch on the east and west line, the train stopped so that the switch could be again set, by the head brakeman, for east and west traffic. The caboose was then at or near the southerly junction with the north and south tracks, the collision occurring just south of this point. The train then backed farther and according to the complaint and the undisputed testimony, the caboose was then entirely on the north and south tracks and was moving to the south. Concurrently, the automobile, in which plaintiffs were riding in a northerly direction, was travelling north on the west side of the street, either in the tracks, straddling the east rail, or near the east rail of the railroad. The left-hand side of the automobile collided with the right rear corner of the caboose, after which, the automobile spun, slid, and rolled to the north for a distance between 50 and 300 feet. This distance was fixed by plaintiff, Davis, at 50 to 60 feet; by defendant's witness, John Meara, by counting the 33 foot rails, at 260 feet from a point 35 feet south of the junction; by defendant's witness, Hartwig, at 275 feet, by counting the poles at the side of the tracks. The engineer, conductor, head brakeman, rear brakeman, deputy county clerk, a police officer, and a resident of the neighborhood in the employ of defendant,

all testified as to two regulation lighted warning lights on the rear end of the caboose. There was also testimony that the rear brakeman stood on the west rear steps of the caboose and waved a lighted electric lantern, and that the switch light, about 4 feet west of the south junction switch, was lighted. The testimony, as to the speed of the automobile, ranged from 25 to 30 miles per hour, as fixed by the plaintiffs, Davis and Mrs. Pope; 35 miles per hour, as fixed by plaintiff, Mrs. Bell; 45 to 50 miles per hour, as fixed by defendant's witnesses, Foskule and May.

The allegations of negligence in the complaint are as follows: ''That the defendant, Illinois Terminal Railroad Company, was then and there guilty of one or more of the following negligent acts: (a) In the nighttime, at about 12:20 a. m., pushed and propelled a train of freight cars, with a locomotive at the rear thereof, onto Broadway over the south branch or junction track of the north and south track, and moved said freight cars south in Broadway without placing a light on the first car being so pushed so that persons using said highway might be warned that the said trains and cars were being operated thereon. (b) Failed to sound a bell or give any warning in backing said train or cars. (c) Failed to maintain a person to warn motorists that said train was being backed up. (d) Failed to provide any signal devices which would apprise motorists of said train being backed up. (e) Created or permitted and allowed a condition dangerous for motorists to exist, in that there were no warning signals or signs or devices to apprise motorists travelling along Broadway of the fact that there was a junction of the tracks running north and south in Broadway with those running east and west of said Broadway as hereinbefore described in paragraph 1 of the complaint of which dangerous condition the defendant knew or in the exercise of ordinary care ought to have known.'' It will be noted

that, in substance, these allegations all charge defendant with failure to warn the plaintiffs. At the close of all the evidence, plaintiffs amended the complaint by adding the charge that defendant carelessly and negligently propelled the train of cars onto Broadway, but later withdrew this amendment, so that the complaint in its final form did not charge the defendant with negligence in the operation or propelling of its cars, but only with negligence in failure to warn.

The first contention of the plaintiffs is that the trial court erred in entering judgment for the defendant notwithstanding the verdicts. On a motion for judgment notwithstanding the verdict, the question presented is whether there is any evidence, which, taken with its intendments most favorable to plaintiff, tends to prove the charge of the complaint. If there is in the record, evidence, which, standing alone, tends to prove the material allegations of the complaint, a motion for judgment notwithstanding the verdict should be denied even though upon the entire record the evidence may preponderate against the plaintiff so that the verdict in his favor cannot stand when tested by a motion for a new trial. (*Walaite v. Chicago, R. I. & P. Ry. Co.*, 376 Ill. 59.)

One of the contentions of the defendant is that the plaintiffs were guilty of negligence that proximately contributed to the injuries complained of.

Considering the evidence in the light most favorable to the plaintiffs, an analysis of the testimony appears as follows: The plaintiff, Mrs. Bell, stated that she was sitting in the left rear seat of the automobile being driven by Woodruff; that the plaintiff, Davis, was in the right rear seat, and the plaintiff, Mrs. Pope, in the right front seat; that the car was proceeding north on Broadway, the east side of which was rough, bumpy, and full of holes; that there were no street lights on Broadway; that the car was straddling the

east rail of defendant's north and south track at a speed of about 35 miles per hour; that the night was clear, the pavement dry, and the windshield clean; that the bright lights of the car were on; that she saw a black shadow coming toward her from an angle; that she didn't see any lights on it as it rushed toward her; that she saw no one holding a lantern and didn't hear any bell sounded or whistle rung; she and Mrs. Pope both screamed and at almost the same time the driver swerved the car to the right and there was a crash; the point of impact was at the left rear fender of the automobile; the automobile spun around, rolled over, and then slid. On cross-examination, she stated that they were talking in the car; that she had not seen any tracks before seeing this black shadow or object; that she did not see any train. On rebuttal, she testified that the automobile was being driven practically straight until it swerved when they saw the black object; that she had not seen the car tracks and didn't know what part of the road the car was on.

The plaintiff, Davis, testified that the automobile was a 1937 Studebaker in good mechanical condition; that the car lights were very good and that the bright lights were on; that they were traveling between 25 and 30 miles per hour; that they were on the west side of the street and about a foot from the east rail when the two women screamed and the driver turned the automobile to the right; a big black object came right in front of them; it was coming around the curve at an angle to his left; it was about 35 to 40 feet away and coming fast; he didn't see any lights on the black object, saw no one there with a lantern and heard no bells nor whistles; the car spun and rolled 50 or 60 feet and was on its right side when it came to rest; Mrs. Pope was about 30 feet south of where the car finally stopped. He stated that he had been a cab driver in Decatur for four or five years and had occasion to drive over North Broadway many

times before the accident; that North Broadway, at this point and south therefrom, was rough, that one had to pick his way and sometimes had to go on the east side and sometimes in the middle; that the space between the tracks was smoother and that on many occasions he had driven on the tracks; that he was 29 years of age, had lived in Decatur all of his life, during which time, to his knowledge, Broadway, at this point, had been used as a street; that on many occasions he had seen vehicles going north in the railroad tracks. On cross-examination, he stated that the automobile was a Tudor sedan; that the bright lights were on, showing about 150 to 200 feet ahead, and that one could see clearly that distance; that the windshield was clear, the street dry, and he was familiar with the street; that he knew the tracks were there but didn't remember seeing them that night; that the crash came almost at the same instant as the scream; he saw a big black object before the collision, but at that time he did not know what it was; the car turned over two or three times and came to a stop on the track; that the occupants of the car were all talking and he was not paying any attention as to what was going on and did not see either the tracks or the caboose at all, or any lights; that the black object was coming fast on the switch track about 35 feet away; that he did not know whether the sedan was on the tracks or not, as he did not see the tracks; that he told the witness, Hoffman, he did not see the caboose at all. On rebuttal, he testified that prior to the accident, the automobile did not, at any time, zigzag from the east to the west side of the street; that it was not on the car tracks; that he did not see the car tracks.

The plaintiff, Mrs. Pope, testified that the driver had his bright lights on prior to the accident; that as they were approaching the "Y," she saw the rear end of a freight train coming from the left at an angle

about 40 to 50 feet away; that she screamed and Woodruff swerved the car to the right; the freight train was coming fast without any lights on the rear end and no one was out with a lantern and she saw no signal of any kind; that the sedan was going 25 to 35 miles per hour; that she knew where the tracks were located on the west side of Broadway but could not see where the automobile was traveling with reference to those tracks; that she did not see any tracks prior to the accident. On cross-examination, she stated that the car headlights were bright and threw a light clearly about 100 to 150 feet ahead of the car; that the occupants of the car were talking and laughing; that she did not see the switch light and did not see a man on the rear end of the train with a lantern; that at the instant she screamed, the driver swerved his car and the crash occurred.

Plaintiffs' witness, Schott, testified that the surface of Broadway was bad; that there were chuck-holes in it but that the space between the rails was in good shape; that the main traveled portion of the road east of the tracks was 18, 20, 50 feet wide, with room for cars to pass without going on the tracks. The witness, Hahn, testified that the surface between the rails was smoother than the street, which was rough and full of holes. Plaintiffs' witness, Harding, a garage mechanic who furnished wrecker service after the accident, testified that he had no difficulty going north on Broadway, which was a good road; that he saw the railroad tracks and did not have to go upon them but kept to the right side of the road. Plaintiffs' witness, Dial, stated that Broadway was rough but that there was ample room for cars to pass east of the tracks which was passable in spite of the chuckholes.

■ Due care on the part of a plaintiff must be alleged in the complaint and proved. An analysis of the evidence in this case, as considered in the light

most favorable to plaintiffs and taken as true with all legitimate conclusions and inferences that may be drawn therefrom, indicates that plaintiffs have conclusively established, on their part, contributory negligence as a matter of law to the extent that all reasonable minds would reach the conclusion that under the factual situation they were not in the exercise of due care, and that the lack thereof proximately contributed to the injuries complained of. To drive on the left side of a street where tracks extended at least 800 feet south of the scene of the accident, with a trolley wire overhead, on a clear night with no obstructions to vision, and with bright car lights showing 150 to 200 feet ahead, at such a speed, that while talking, no one apprehended the potential danger, or, if so, gave no effective warning, capable of being acted upon, to the driver, was not in the exercise of due care. This is true, regardless of ch. 95½, par. 151, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 85.183], which makes it unlawful to drive on the left side of a roadway except under certain conditions not applicable to this case. This statutory violation was, of course, only prima facie evidence of negligence on plaintiffs' part, but such prima facie case was not only not overcome by plaintiffs but indeed established by them. In the case of *Illinois Cent. R. Co. v. Hall*, 72 Ill. 222, the court said: "It is negligence for a person to walk upon the track of a railroad, whether laid in the street or upon the open field, and he who deliberately does so will be presumed to assume the risk of the perils he may encounter. The crossing of a track of a railroad is a different thing. The one is unavoidable, but in the other case he voluntarily assumes to walk amid dangers constantly imminent."

While it is true that the negligence of a driver cannot be imputed to a passenger, yet, if the person riding in the vehicle knows that the driver is negligent and takes no precautions to guard against injury,

he cannot recover, for, in such case, the negligence is his own and not simply that of the driver. The plaintiff cannot rightfully omit to use care in blind dependency upon another, but must use care proportionate to the danger of which the facts convey knowledge. (*Flynn v. Chicago City Ry. Co.,* 250 Ill. 460.) The language of the Supreme Court in the case of *Illinois Cent. R. Co. v. Oswald,* 338 Ill. 270, 274, is applicable here, wherein it was stated: "In the absence of willful or wanton injury on the part of the defendant the plaintiff cannot recover in an action for personal injuries unless it appears he was in the exercise of ordinary care for his safety, and in such case it is the duty of the Court to direct a verdict for the defendant if there is no evidence tending to show affirmatively that the plaintiff was exercising due care or to raise a reasonable inference of such care. A party has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the use of reasonable precaution. Although it is true that the question of contributory negligence is ordinarily a question of fact for the jury, yet when there is no conflict in the evidence and the Court can clearly see that the injury was the result of the negligence of the party injured, it should not hesitate to instruct the jury to return a verdict for the defendant."

The trial court did not err in entering judgment notwithstanding the verdict as to each of the three plaintiffs.

The action of the trial court in granting, in the alternative, the motion for new trial is also before the court, as it is embodied in the same order. It is apparent that in addition to what has heretofore been stated as to plaintiffs' lack of due care, the evidence is overwhelming that defendant was not negligent as to warning the plaintiffs, this being the only charge of negligence in the complaint. The four members of

the train crew testified as to proper and customary lights on the rear end of the caboose, lighted, and showing a red light to the south, in addition to testimony of witnesses, some entirely disinterested, to the same effect. There is also testimony that the rear brakeman signaled with a lighted white lantern, and that the switch light at the south junction was also burning. The testimony as to the speed of the automobile, the distance it spun, slid, and rolled, and the damage to it, are also pertinent in reviewing the greater weight of the evidence. The circuit court did not err in granting this alternative relief.

Although defendant has moved in this court for dismissal of the appeal by reason of alleged procedural defects, it is unnecessary to rule on such motion in view of the foregoing findings.

The judgment for the defendant notwithstanding the verdict as to each of the plaintiffs is affirmed, as is the alternative order granting a new trial.

*Affirmed.*