Nora RHYNE, Administratrix of the Estate of Ettie Julia Carr, Deceased, Appellant,

v.

Guy A. THOMPSON, Trustee of Missouri Pacific Railroad Company, a Corporation, Respondent.

No. 44961.

Supreme Court of Missouri, Division No. 1.

Nov. 14, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 12, 1955.

Glennon T. Moran and Sherman Landau, St. Louis, for appellant.

Harold L. Harvey, Oliver L. Salter, Donald B. Sommers, St. Louis, for respondent (defendant).

HOLMAN, Commissioner.

This is an action for damages for the alleged wrongful death of plaintiff's decedent, Mrs. Ettie Carr, as a result of being struck by a cut of freight cars during a switching movement. Plaintiff received a jury verdict of $10,000. Thereafter, on proper motion, the trial court set aside the verdict and entered judgment for defendant. In the alternative the court granted a new trial because of error in giving certain instructions. The view we take of the case makes it unnecessary to consider the alternative order or to detail the facts in evidence relating to damages. Plaintiff has duly appealed.

The unfortunate casualty in question occurred in a switching area of defendant known as the "Chester Yards," located in Chester, Illinois. Mrs. Carr had occupied a small house in about the center of these yards for two years. She cared for two adult chilmen, a son in poor physical health and a daughter who was mentally afflicted. She was more than seventy years of age but was in good health except for impaired hearing. The area involved was immediately east of the Mississippi River. One proceeding east from the river would cross (1) defendant's main line, (2) a passing track, (3) a concrete highway known as Water Street, (4) switch tracks numbers one and two, (5) a private roadway, (6) the area upon which was located decedent's home, and (7) other switch tracks. On the hillside east of the yards are a number of houses the occupants of which travel over the roadways through the defendant's switchyard.

The lead track to the switchyard runs southeastwardly from the passing track diagonally across Water Street. A switch on this track permits cars to be moved onto switch tracks one and two about which we are primarily concerned herein. These tracks run about 1,100 feet south and then recross Water Street and rejoin the passing track. Also, a private road runs from Water Street a short distance to the east, crossing the lead track, and thence southwardly following generally along the line of switch track number two, passes decedent's home and rejoins Water Street at its southern terminus. Another private roadway runs almost due east from Water Street across tracks one and two to the home in question. This passway is generally blocked in the afternoon by cars on these switch tracks. It therefore appears that there were three ways to enter the yards by roadway and reach decedent's home, (1) over the private road from the north, (2) over the same roadway from the south, and (3) (if not blocked) over the direct roadway from Water Street to her home. All of these ways involved crossing defendant's tracks.

On the afternoon of the day of her death (July 21, 1953) Mrs. Carr approached defendant's switchyard from the north walking on the east side of Water Street. At that time defendant's crew was engaged in performing certain switch movements. Decedent was known to most of the crew as she went over these roadways several times a day. She was carrying a small package which plaintiff says would give notice to the crew that she was on her way home. She visited with switchman Wormack while the engine and five cars backed northwestwardly across Water Street. Wormack then escorted her across the track and she continued south on Water Street. Switchman Perry was stationed at the private road crossing over the lead track near the switch which controlled the movement of cars into tracks one and two.

Shortly after Mrs. Carr had crossed the lead track (from one to three minutes) one of the cars was kicked onto track number one. This track will hold from 25 to 27 cars and had from 20 to 23 cars on it at the time. The four remaining cars were to be placed on track two. Wormack looked south and saw that this track was clear. No person was in sight. He then gave the signal to the engine crew to kick the cars

onto that track. This is sometimes referred to as a "flying switch." Perry set the number two switch for the move. As the cars rolled by it was his duty to catch the lead car and climb to the top so that he could stop the cars at the proper place by use of the hand brake. As the first car got to him he looked to the south and saw Mrs. Carr walking on the east side of track number two, right up against the rail, with her back to the oncoming cars. Perry estimated that she was then from 50 to 75 feet south of him. He shouted a warning to her but she gave no indication of hearing it. He then caught the rear of the first car, climbed it, and ran across the top and attempted to set the hand brake. He was too late to prevent Mrs. Carr from being struck and instantly killed by the cars.

None of the witnesses knew how deceased reached this point. When last seen by the crew she was proceeding south on Water Street. Perry testified positively that she did not enter the yard at the private road crossing where he was stationed. There was no crossing at the point where she was killed. It should also be noted that two eyewitnesses said that she was not walking *across* track number two but was walking *down* the track to the south. It had rained some on the day in question and the dirt portion of the yards was a little muddy. This condition might explain her reason for walking on the ties rather than on the private roadway. In her efforts to prove her case plaintiff relied almost exclusively upon the testimony of members of the crew.

■ Our task upon this appeal is to determine whether plaintiff made a submissible case. In so doing it is our duty to view the evidence in the light most favorable to plaintiff and to accord to plaintiff the benefit of all favorable inferences reasonably arising from all the evidence. Defendant's evidence will be disregarded unless it aids plaintiff. Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295. The law of Missouri relating to procedural matters shall govern since the cause was tried in the courts of this state. However, the fatal accident occurred in Illinois and hence the applicability of the substantive law of that state is elementary. Bryan v. Sweeney, 363 Mo. 1024, 256 S.W. 2d 769.

Plaintiff's Instruction No. 1 required the jury to find that decedent was at all times exercising ordinary care for her own safety and, in the conjunctive, that defendant was negligent (1) in failing to have a crewman stationed at the brake on one of the cars at the time the movement was detached from the engine, (2) in failing to adequately and timely warn decedent, under the circumstances, of its purpose to shunt the cars onto track two, and (3) in failing to refrain from moving the said cut of cars until after defendant had ascertained that decedent was not in a position where she would be endangered by the movement of said cars. The submission of these matters was authorized by appropriate allegations in the petition of plaintiff.

■ The Missouri humanitarian doctrine, which permits a recovery for negligence of a defendant, notwithstanding the contributory negligence of a plaintiff, is not recognized in Illinois. Jones v. Illinois Terminal R. Co., Mo.Sup., 272 S.W.2d 272. It is a basic principle of the substantive law of that state that a plaintiff (unless he bases recovery upon a charge of willful and wanton negligence) must allege and prove that he was exercising due care and hence was not guilty of acts of negligence which contributed to his injury. Pope v. Illinois Terminal R. Co., 329 Ill.App. 62, 67 N.E.2d 284; Bryan v. Sweeney, supra. As heretofore indicated plaintiff assumed this burden by the allegation and submission that decedent was in the exercise of ordinary care for her own safety. We have concluded, however, that the plaintiff failed to make submissible proof of this fact. On the contrary, it is our view that plaintiff's evidence established, as a matter of law, that decedent was guilty of contributory negligence.

■ "The question of contributory negligence is ordinarily a question of fact for the jury, yet when there is no conflict in the evidence and the court can clearly see that the injury was the result of the

negligence of the party injured, it should not hesitate to instruct the jury to return a verdict for the defendant." Ames v. Terminal R. Ass'n of St. Louis, 332 Ill.App. 187, 75 N.E.2d 42, 45. In the instant case there was no substantial conflict in the evidence. It should be noted that decedent had lived in this switchyard for two years; she made a number of trips in and out of the yard each day; she was bound to know that track number two was not an isolated track which was rarely used but that it was used daily; she knew that the switch crew was engaged in a switch movement in that immediate area at that very time; she must have known that her hearing was impaired so that it would be difficult for her to hear car movements or warnings that might be given. With all this knowledge of the dangers involved she walked down the track with her back to the area where the switching operation was in progress. We can hardly conceive of any action she could have taken that would have been more negligent. Illinois Central R. Co. v. Hall, 72 Ill. 222; Pope v. Illinois Terminal R. Co., supra.

█ █ In an effort to avoid the effect of an adverse decision on the question of the contributory negligence of decedent, plaintiff alleged that the negligent acts and omissions of defendant were willful and reckless. In accord with this allegation, Instruction No. 8 provided as follows: "Even though you may find that the deceased was guilty of negligence which directly contributed to her own death, but further find that the defendant's acts or omissions, if any, as submitted to you in these instructions manifested a willful or reckless indifference to the rights, safety or physical welfare of the decedent, Ettie Julia Carr, on the occasion shown in evidence; * * * then your verdict should be in favor of the plaintiff and against the defendant." This instruction is in harmony with the substantive law of Illinois. Robertson v. New York Cent. R. Co., 321 Ill.App. 313, 53 N.E. 2d 144. The question of willful and reckless conduct is a fact issue to be decided by the jury unless the evidence most favorable to plaintiff fails to show willful acts done without regard to the safety of others. We must therefore determine whether the evidence in the instant case would present a submissible issue as to whether defendant's crewmen were guilty of negligence which could be considered willful and reckless.

█ "Ill will is not a necessary element of a wanton act. To constitute a wanton act the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person, or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal willfulness, such as charges the person whose duty it was to exercise care with the consequences of a willful injury." Jeneary v. Chicago & I. Traction Co., 306 Ill. 392, 138 N.E. 203, 206. Plaintiff argues that the evidence reasonably justifies the inference that the members of the crew knew or should have known that decedent was on her way home and hence their conduct was willfully and recklessly negligent in the three respects hypothesized in Instruction No. 1. In aid of this assertion it is pointed out that she was coming from the business district carrying a package and headed in the general direction of her home. We are asked to go one step farther and conclude that since the crew knew that the roadway from Water Street to her home was blocked by cars on track number one, they should have anticipated that she might choose another route which would lead her over the northern part of tracks one and two.

█ We cannot agree with this contention. Perhaps it might be inferred from the evidence that decedent was enroute to her home, but there was nothing which tended to indicate that she would go over any route other than the established roadways. In the first place, we point to the complete

absence of evidence of any custom or practice of decedent, or any of the other residents of the area, to go through these yards in any manner other than over the roads we have described. Therefore, there was no general duty upon these crewmen to be on the lookout for decedent or others (except at the regular crossings) as they performed these switching operations. Milauskis v. Terminal R. Ass'n of St. Louis, 286 Ill. 547, 122 N.E. 78. Plaintiff makes no contention that there was any such general duty but, as stated, asserts that the circumstances should have indicated to the crew that decedent, on this particular occasion, might choose a dangerous route and hence they were willfully negligent in failing to take the measures hypothesized in Instruction No. 1 for her protection.

If Mrs. Carr had desired to go directly to her home, the logical and safe route would have been to cross the lead track at the crossing over the private road at the north entrance to the yard and proceed over this roadway to her home. This crossing was being guarded by switchman Perry but it is reasonable to assume that he would have permitted her to cross when it could have been done with safety. Plaintiff argues that decedent must have intended to take the road that ran due east from Water Street to her home and could not have discovered, until after she had passed the aforementioned crossing, that her intended route was blocked by cars on track number one. The evidence is that this crossing was blocked by cars almost every afternoon. Decedent as well as the crewmen must have known that. However, assuming that she did not anticipate that this crossing would be blocked, when such was discovered, there remained two safe ways she could have proceeded. She could have gone back north a very short distance to the roadway we have heretofore discussed, or she could have gone on to the south entrance of the yard and walked back north to her home. This latter route would have involved an added distance of about one city block.

Even when decedent entered the yard at the north end of track number one (as she must have done) she could have crossed over these tracks to the roadway with comparative safety rather than choosing the dangerous alternative of walking down track two with her back to the switch movement.

We find nothing in the evidence upon which to base a submission of willful and reckless negligence on the part of defendant's crew. When last seen by the crew (until a few seconds prior to her death) decedent was proceeding south on Water Street. As we have shown, there was no evidence of any acts or circumstances from which the members of the crew should have reasonably inferred that she would enter the yard at a place other than the usual road crossings. Moreover, they certainly would not be required to anticipate that she would choose the perilous course of walking down the track when a safe route over the private roadway, a few feet to the east, was open to her. We find nothing in the conduct of this crew, as shown by the instant record, to indicate that they were proceeding with these switching operations in such a negligent manner as to exhibit a willful and reckless disregard for the safety of this decedent. Howie v. St. Louis S. W. Ry. Co., 360 Mo. 771, 230 S.W.2d 703.

In support of her contention that defendant was guilty of willful and reckless conduct plaintiff cites McDaniels v. Terminal R. Ass'n of St. Louis, 302 Ill.App. 332, 23 N.E.2d 785; Collins v. Missouri-Illinois R. Co., 233 Ill.App. 545; Brown v. Illinois Terminal Co., 319 Ill. 326, 150 N.E. 242, 151 A.L.R. 1; Bernier v. Illinois Central R. Co., 296 Ill. 464, 129 N.E. 747; and Baltimore & O. R. Co. v. Felgenhauer, 8 Cir., 168 F.2d 12. These cases may be distinguished from the instant case upon the facts. In each case the employees of the railroad either knew that the injured person would likely be in the place of danger or had actual knowledge of the position of such person and failed to warn or take other action to avoid the accident. We have examined other cases cited by plaintiff and have determined that they do not support the contention for which they were cited.

What we have heretofore said will indicate our view that the trial court acted properly in setting aside the verdict for plaintiff and entering judgment for defendant in accordance with defendant's motion seeking such relief.

The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.