(No. 11578.—Judgment affirmed.)

GEORGE ALEXANDER, Plaintiff in Error, *vs.* THE INDUS-TRIAL BOARD OF ILLINOIS *et al.* Defendants in Error.

*Opinion filed December 19, 1917.*

1. WORKMEN'S COMPENSATION—*violation of ordinance is not a bar to claim for compensation.* The fact that at the time an employee of a private contractor was killed he was, by invitation of an employee of a railroad company, violating an ordinance forbidding persons from crossing the tracks of a railroad which had been elevated pursuant to ordinances of the city, is not a bar to a claim for compensation.

2. SAME—*when an injury arises out of the employment.* Where a workmen employed by a private contractor to unload stone from cars on a team track near elevated railroad tracks is invited by the yardmaster of the railroad company to enter upon the tracks and board a slowly moving cut of cars in order to get tools and work clothing out of a car where the workman had left them the night before on leaving the car partially unloaded and is killed by an express train as he entered upon the tracks, the injury must be held to arise out of the employment, where it was customary to leave the tools in partially unloaded cars and to recover them in case the cars were moved during the night, and where it was necessary to make use of the tools in unloading stone from other cars.

3. SAME—*contributory negligence no defense under Workmen's Compensation act.* Contributory negligence, under the Workmen's Compensation act, is not a defense and does not affect the question whether the act of the employee was within his employment.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

FRANK M. COX, and R. J. FELLINGHAM, for plaintiff in error.

WILLIAM E. GRIFFIN, (JAMES C. MCSHANE, of counsel,) for defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error prosecutes this writ of error to review a judgment of the circuit court of Cook county quashing a writ of *certiorari* and affirming an award of compensation allowed by the Industrial Board in favor of Arthur Olsen, administrator of the estate of Charles Olsen, deceased. Judgment was rendered on the award, and the judge of the court has certified that this cause is one proper to be reviewed by this court.

The case was submitted to the Industrial Board in the first instance, a hearing before the committee of arbitration being waived, and a hearing was had on a stipulation of facts and an ordinance of the city of Chicago admitted in evidence and stipulated to be in force at the time of the accident in question, which provides, in substance, that it shall be unlawful for any person, other than employees of railroad companies acting in the discharge of their duties, to enter or be upon or to walk along or across any tracks of any railroad which are elevated in accordance with the ordinances of said city, and that any person who shall willfully trespass on any such elevated roadway or tracks shall be fined, the penalty being fixed at not less than $3 nor more than $100 for each offense. It is also stipulated that the main lines of the Illinois Central Railroad Company at the place where the accident occurred were, at and before the time of the accident, elevated pursuant to the ordinances of said city.

It appears from the stipulation of facts in the record that the deceased, Charles Olsen, was at the time of the accident, May 27, 1916, in the employ of plaintiff in error; that his duties were that of a stone-derrickman, a part of his work consisting of assisting in unloading stone from cars on switch tracks, and that he had worked a large part

of the time, for more than five months immediately prior to the accident, in unloading cars in places similar to the one he was starting to work in on the day he was killed. At the place of the accident, and at least a mile north and south thereof, the railroad right of way is elevated about six feet above the public street adjacent to the elevation on the east side thereof. Eight main line railroad tracks were laid on said elevation, which tracks were enclosed by a paling fence about five feet high on the eastern edge of said elevation. There were no openings in the fence or crosswalks over said tracks at the place where the accident occurred, between Fiftieth and Fifty-first streets, or close to that place. The elevation sloped to the street, about six feet below, at an angle of about forty-five degrees. A switch or loading track ran north and south and parallel with said elevation and fence and immediately adjacent to the east foot of said embankment and extended several hundred feet north of the place where the accident occurred. Immediately east of this switch track there was a street or roadway about twenty feet wide, and immediately east of it was another switch track parallel to the switch track above mentioned. The street or roadway was used for the purpose of loading and unloading cars placed on the switch tracks on either side of said roadway. The street passed under the elevated tracks and steps led up to a station, where passengers entered the cars. No station or place of entry to the elevated tracks was nearer than from four to six hundred feet from the place of the accident. On the day prior to the accident the deceased and other employees of plaintiff in error were unloading cars on the easterly of said two switch tracks, close to the place of the accident. During that day they had been unloading a car of stone. The stone was removed from the car onto wagons and then hauled to a building in the process of construction, known as the University building. When they had completed their day's work, at about 3:30 P. M., they had about a wagon-

load of stone left in the car they were unloading. They left in this partially unloaded car some tools with which they were working, consisting of an iron crow-bar, two wooden rollers about two feet in length and about four inches thick, and one or two planks on which the stone was rolled or skidded from the car into the wagon, and also a pair of overalls belonging to the deceased. It was customary for the men to leave their overalls and tools in the car when they quit work for the day if the car was only partially unloaded. When they quit work the day before the accident the men intended to return the next morning and finish unloading said car. The stone they were unloading was cut stone and lay in the car on excelsior, and in removing the stone from the car it was necessary to handle the pieces carefully to avoid breaking them, and the rollers and planks were used for that purpose. It was much easier to get the stone out of the car with the tools above mentioned than without them. After unloading the cars the stone was transferred to the said building, about two miles away, by teams and drivers working for teaming contractors. The deceased arrived at the switch track to resume his work of unloading cars on the morning of the 27th of May, at about seven o'clock, and discovered that the car in which he had left his overalls and tools the day before had been moved during the night by the railroad company. The yardmaster of the railroad company informed the deceased that the partially unloaded car had been moved north during the night by the switching crew to a point at about Forty-third street and that the car would be back at its former location the next morning, and told the deceased to go to the car and get the things that had been left in it the night before. The deceased made reply that it was too far. After this conversation the deceased left the yardmaster's office and went back to where the cars were on the switch track and went to work unloading another car of stone for plaintiff in error onto a wagon, but he and the

other workmen confined their work to the smaller pieces that did not require tools of the kind mentioned in handling. Plaintiff in error had other tools of the same kind as those left in the car, at the building to which the stone was being hauled. After the deceased had been working about forty-five minutes the yardmaster came to where he and the other workmen were unloading the car and said to the deceased: "Here comes your car in that train now; it's running slow, and you can jump over the fence and get on the car and throw off your tools and overalls." This freight train was moving slowly, and was then on the fourth track west of the fence and going south. The deceased, without any orders from any source and without the knowledge of plaintiff in error, immediately jumped from the car he was upon, climbed over a flat-car between him and the embankment, ran up the embankment, climbed over the fence onto the elevated right of way of the railroad company, and was immediately thereafter struck and killed by a suburban express train running north on the track next to the fence. Trains were accustomed to pass on the track next to the fence about every ten minutes, and trains were going north or south on some of the eight tracks about every three or four minutes during the day. The deceased knew that said trains were passing at frequent intervals on said track and could see them passing from the place he worked. He was a careful workman and deemed a cautious man. Plaintiff in error was not present when the accident occurred and did not have anyone representing him there except the deceased, who was in charge of unloading the stone.

Both plaintiff in error and the deceased were operating under the Workmen's Compensation act of 1913, and there is no question raised concerning the giving of proper notice of claim for compensation or concerning the amount of compensation recoverable. The only question presented by this record is whether or not the deceased was killed in an accident arising out of his employment. It is admitted that

the deceased was attempting to get his overalls and tools for use in the business of his employer when he was killed. It is not disputed that they were necessary in unloading the larger pieces of stone and enabled the men to handle the stone with more ease and with less danger of breaking. As it was customary for the men to leave their overalls and tools in a car over night when only partially unloaded, it may be fairly assumed that it was not an unusual occurrence for them to find that the car had been removed to another part of the switch yard when they returned to work, and that occasionally they would have to follow the car to another part of the switch yard to get their tools and finish unloading or await the pleasure of the railroad men to return the car to the place from whence it was removed. The recovery of the overalls and tools by the men when they were removed to other parts of the switch yard in question was a part of the work they had to do in fulfilling their contract of service. They could not handle the stone properly without them, and from the stipulated facts in the record it is fairly shown that their contract required them to use the tools in removing the larger stone. There was no requirement in their contract or any rule of the employer, so far as the record discloses, that made it the duty of the deceased or of any of the men to return to the building, two miles away, to obtain other tools with which to work, rather than to follow up and recover their tools from the car in which they were left or that forbade them going to any part of the switch yard to obtain them. Plaintiff in error's employee therefore violated none of the express terms of his contract or any express rule of his employer in attempting to recover his overalls and tools. It cannot be reasonably said, therefore, that the attempt of the deceased to recover his tools and overalls was not an incident of his employment and that the accident did not arise out of the employment.

In *In re McNicol,* 215 Mass. 497, it is well said that it is not easy or necessary to the determination of a case to give a comprehensive definition of the words "injury arising out of and in the course of his employment," which shall accurately include all those embraced within the Workmen's Compensation act and with precision exclude those out of its terms. The court in the same case aptly said: "It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It arises 'out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

In *State* v. *St. Louis County District Court,* 129 Minn. 176, it is said that the accident causing the injury must arise out of the work or business being done for the employer by direct or implied authority.

In *Larke* v. *John Hancock Mutual Life Ins. Co.* 90 Conn. 303, it was held that if the nature of the employment, or the conditions under which it was pursued, or the exposure to injury it entailed, or the doing of something incidental to the employment, was a proximate cause of the injury it arises out of the employment, and that the proximate cause of the injury is not necessarily that which immediately arises out of the employment but may be that which is reasonably incidental to it.

It was said in *In re Sponatski*, 220 Mass. 526, that it is of no significance whether the precise physical harm was the natural and probable or the abnormal and inconceivable consequence of the employment, and that the single inquiry is whether in truth it did arise out of and in the course of the employment.

In *Archibald* v. *Ott*, (W. Va.) 87 S. E. Rep. 791, it was held that if there is an incidental or causal connection between the employment and the accident the injury is deemed to have arisen out of the employment even when the connection is somewhat remote and even when the direct and immediate agency of the injury is foreign.

It was held by this court in *Ohio Building Vault Co.* v. *Industrial Board,* 277 Ill. 96, that if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation, as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment.

It cannot be said that there was no causal connection between the injury and the employment in this case, because, had the deceased not been engaged in the particular work or employment of unloading the stone from the car, his obtaining the particular tools in question would not have been necessary. It is not a sufficient answer to say that the contract of employment could not have contemplated any such negligence on the part of the employee as is attributed to

the deceased under the facts in this case, because contributory negligence, under the Workmen's Compensation act, is not a defense and does not affect the question of what is within the scope of the employment or defeat the right of recovery. (*Decatur Railway Co.* v. *Industrial Board*, 276 Ill. 472; *Chicago Railways Co.* v. *Industrial Board* 276 id. 112.) Had the deceased gone to Forty-third street after his overalls and tools, as he was advised by the yardmaster he could do, there could have been no reasonable contention that he was acting outside the scope of his employment. It is true, as contended by the plaintiff in error, that in all probability he would not have been injured. The fact that he selected a time and place to recover those articles that were fraught with greater danger cannot be taken as a test as to whether or not his injury arose out of and within the course of his employment.

Plaintiff in error relies on the case of *Dietzen Co.* v. *Industrial Board*, 279 Ill. 11, as sustaining his contention that the accident did not arise out of the employment of the deceased. In that case the injured party received his injury while reaching into an exhaust system to get a piece of metal which he had been polishing and which had fallen from his hands into the exhaust. The machinery upon which the employee was assigned to work was entirely separate and apart from the exhaust system. The exhaust system was in charge of a special, responsible man for the purpose of cleaning and oiling the same, and the injured employee had been specially instructed to have nothing whatever to do with the exhaust system but to notify the person in charge of the same in case anything went wrong. His sole duty in his employment at the time he was injured was to take metal pieces and hold them against a buffing wheel until they were polished. He was not engaged in any business of his employer or in anything connected with his employment when he was injured. He was therefore held in that case not to have been injured while he was work-

ing within the scope of and in the line of his employment, therefore the facts in that case are not controlling here.

Plaintiff in error insists that the deceased was violating an ordinance of the city at the time he was injured, and that, as the Workmen's Compensation act becomes a part of the employment, it could not be held to include any act which would be in violation of any ordinance or statute. The violation of the ordinance in question was only *prima facie* evidence of contributory negligence. (*Kenyon* v. *Chicago City Railway Co.* 235 Ill. 406.) As contributory negligence does not affect the question of the scope of the employment, the violation of the ordinance is not a bar to a claim for compensation. The deceased had permission from an employee of the railroad company to enter upon the elevated railroad tracks to recover his overalls and tools. If it be said that he violated the ordinance in question and subjected himself to a fine, that fact only tends to show the degree of his negligence and does not shed any light upon the question whether or not the accident arose out of the employment. Contributory negligence not being a defense under the Workmen's Compensation act, that fact must settle all further argument upon this proposition, as it would not be reasonable or practicable to undertake to lay down a rule that in one case contributory negligence is not a defense and in another case it is a defense because the degree of negligence was greater in the latter case than in the former. The deceased went onto the elevated tracks in the course of his duty to obtain necessary tools with which to do his work, and such act, "even though reckless," cannot be said not to have been in the course of his employment. *Decatur Railway Co.* v. *Industrial Board, supra.*

We find no error in the court's judgment, and the same is therefore affirmed.    *Judgment affirmed.*