## COX v. KROGER CO. et al.
### No. 9933.

United States Court of Appeals
Seventh Circuit.
Jan. 23, 1950.

See also 9 F.R.D. 78.

Dewitt Twente, Charles E. Combe, Harrisburg, Ill., Howard B. Clark, Cincinnati, Ohio, Andrew J. Farrell, Chicago, Ill., Loren E. Lewis, Harrisburg, Ill., for appellants.

D. L. Duty, Marion, Ill., Harry J. Flanders, Eldorado, Ill., Charles D. Winters, Kenneth B. Powless, Marion, Ill., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff brought suit to recover damages sustained in a collision which, he avers, was occasioned by the negligent operation of an automobile owned by defendant Kroger Company and operated by its agent, defendant Johns. The jury found for plaintiff and assessed his damages at $10,300.00. From the resulting judgment, defendants appeal, contending that the trial court erred in denying their motions for a directed verdict and for judgment notwithstanding the verdict.

■ In resolving the controversy presented by this appeal, this court need only determine whether, as defendants contend, the evidence most favorable to plaintiff, together with all the legitimate inferences therefrom, failed to establish that plaintiff was in the exercise of due care for his own safety, for if there is any evidence which, considered in the aspect most favorable to plaintiff, sustains his cause of action, the court did not err in overruling defendants' motions. Froehler v. North American Life Ins. Co. of Chicago, 374 Ill. 17, 27 N.E.2d 833; Gnat v. Richardson, 378 Ill. 626, 39 N.E.2d 337; Conway v. O'Brien, 312 U.S. 492, 61 S.Ct. 634, 85 L.Ed. 969.

Plaintiff's evidence is that, on the day of the accident, he, a mechanic in a garage in Eldorado, ceased work shortly after 5:00 P.M. and, driving the 1934 Chevrolet he had purchased only shortly before, proceeded to his home, approximately one mile from Eldorado. There he found his neighbor Cooley unable to start the latter's Model A Ford. Plaintiff, in his car, pushed Cooley's Ford east along Seagraves Road about half a mile to the point of its intersection with U. S. Route 45. Arriving there, as both plaintiff and Cooley testify, they crossed the paved highway to a service station. Finding no one there who could start the Ford, they made a complete circle to the left and headed south on Route 45, their avowed destination being an all-night garage on the highway just north of Eldorado. After proceeding some 100 yards, plaintiff noticed that the bumpers of the two cars had become locked. On discovery deposition, he had said that the

bumpers became fastened together when he and Cooley turned from Seagraves Road on to Route 45. He attempted to disengage the bumpers by applying his brakes, but could not do so, and the two cars continued southward on the highway another hundred yards or more, until plaintiff's engine became overheated, began steaming and stopped. He managed to get the two right wheels of his car off the highway, but Cooley, who said he did not know plaintiff's motor had stalled until he heard the steam spouting, made no effort to turn from the highway on to the shoulder.

After trying unsuccessfully to start his motor, plaintiff, carrying a flashlight, walked behind his car to flag traffic while Cooley went between the two cars and attempted to disengage the bumpers. It was dark and a light rain was falling. Plaintiff had waved two automobiles around the halted Ford and Chevrolet before he noticed the lights of the on-coming Kroger car. Standing in the center of the southbound traffic lane, waving his flashlight, he observed that "it was coming pretty fast" and started backing off the highway, still waving his light. The driver of the car, according to plaintiff's testimony, failed to apply his brakes until "after he got close to me". The car, skidding, struck plaintiff, sideswiped the Chevrolet, and then came to a stop about fifty feet beyond. Cooley, after shouting for plaintiff to "look out," had jumped aside and was not injured.

Since there is no doubt that there was credible evidence from which the jury could have found that defendant Johns was negligent, the only additional testimony requiring consideration is that elicited from plaintiff on cross-examination concerning the condition of his automobile and bearing upon the question of contributory negligence. After testifying that his 1934 Chevrolet was in good condition, except that the radiator "would stop up," causing the engine to overheat and stall, plaintiff was asked how many times this had occurred prior to the night of the accident. He replied that the motor had stopped once, the day before the accident, and that he had put "some stuff" in the radiator in an attempt to correct the situation. Plaintiff

admitted that, when his deposition was taken, he had testified that the car had stopped three or four times, and explained this by saying that "before I got the car, it stopped for somebody else but it hadn't stopped for me." It also appeared that, in the same deposition, he had stated that he had put the radiator cleaner in the radiator "a week before the accident," rather than the day before, as he testified at the trial, and that this had seemed to increase the clogging. Again, at the trial, he admitted that the radiator seemed to "stop up worse" after he had put the cleaner in it.

Defendants, in contending that plaintiff was contributorily negligent as a matter of law, rely upon the provisions of Sections 88 and 102 of the Uniform Traffic Act, Ill.Rev.Stats.1947, Chap. 95½, Paragraphs 185 and 199. Section 88 provides that "(a) Upon any highway outside of a business, residence, or suburban district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway * * *" with the exception that "(c) This section shall not apply to the driver of any vehicle which is disabled on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position." Section 102 makes it "unlawful for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or property * * *." It is the position of the defendants that the plaintiff violated these statutory provisions and was guilty of contributory negligence in that (1) he drove his automobile on to the highway, knowing it to be in a defective or unsafe condition, and (2) he stopped the automobile (which, they contend, was not "disabled" within the meaning of the exception noted in Section 88(c) ) upon the highway, although it was neither impracti-

cal nor impossible for him to have avoided stopping it in such position.

That plaintiff knew that his automobile had a defective radiator which was likely to overheat and stall the engine is plainly evident from his own testimony. Whether the car had stopped three or four times while he was driving or only once and three or four times when others were driving, is immaterial; the important thing is that he knew that it had stalled three or four times. And, in view of his testimony that the radiator seemed to "stop up worse" after he used a cleaning compound, it is equally obvious that he knew, and this regardless of whether the radiator cleaner had been put in the day before or a week before the accident, that the defect had not been remedied. He also knew, he must have known, after pushing Cooley's Ford for half a mile along Seagraves Road, that its motor was hopelessly dead. Knowing all this, plaintiff pushed Cooley's car out on to a state and federal paved highway where, as he soon discovered, the bumpers of the two cars became locked. Even then he made no effort to signal Cooley to pull off on to the shoulder where they might have been able to disengage the bumpers and would have been out of the lane of traffic, but proceeded along the highway, though he must have been aware that, in the event his engine overheated and stopped, as he knew it was likely to do, the two men would be unable to push both cars off the highway, locked together as they were. That such conduct constituted a violation of Section 102 of the Uniform Traffic Act seems quite clear, and that this statute, though penal in form, establishes a standard of care the breach of which may be made the basis of a negligence action is equally clear. Sears v. Beverley, 4 Cir., 171 F.2d 659; Clark v. Gitterman, 337 Ill.App. 390, 86 N.E.2d 276, 281; Schachtrup v. Hensel, 295 Ill.App. 303, 14 N.E.2d 897.

It is true, of course, that Illinois regards a statutory violation as no more than prima facie evidence of negligence, Alexander v. Industrial Board, 281 Ill. 201, 117 N.E. 1040; Hill v. Hiles, 309 Ill.App. 321, 32 N.E.2d 933; Clark v. Gitterman, supra, but where, as here, the evidence of the plaintiff not only fails to overcome the prima facie proof afforded by the clear statutory violation but also clearly establishes that plaintiff was negligent and his negligence a contributory cause of the injuries of which he complains, he cannot recover, Pope v. Illinois Terminal R. Co., 329 Ill.App. 62, 67 N.E.2d 284. In such cases the trial court should not hesitate to direct a verdict for the defendant. Illinois Central R. Co. v. Oswald, 338 Ill. 270, 275, 170 N.E. 247; Wilson v. Illinois Central R. Co., 210 Ill. 603, 607, 71 N.E. 398; Beidler v. Branshaw, 200 Ill. 425, 430, 431, 65 N.E. 1086.

As to defendants' contention that plaintiff violated Section 88 of the Uniform Traffic Act by stopping on the paved portion of the highway, we doubt that this court would be justified in saying that there was no evidence from which the jury could have found that plaintiff's car was disabled in such manner that it was impossible for him to have avoided stopping in such position and, thus, that plaintiff came within the exception in subparagraph (c) of Section 88. But, assuming that plaintiff's stopping on the highway was unavoidable, and assuming that, once the cars had stopped, he conducted himself in a reasonably prudent manner, the fact remains that he had placed himself in this perilous position by his own negligent violation of Section 102 of the Traffic Act and, thus, contributed to the injuries sustained by him in the accident. That the plaintiff, under these circumstances, must be denied recovery is clear from Illinois Central R. Co. v. Oswald, 338 Ill. 270, 275, 170 N.E. 247, 249, where it is said: "A party has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the use of reasonable precaution. Although it is true that the question of contributory negligence is ordinarily a question of fact for the jury, when there is no conflict in the evidence and the court can clearly see that the injury was the result of the negligence of the party injured, it should not hesitate to instruct the jury to return a verdict for the defendant. Wilson v. Illinois

Central Railroad Co., 210 Ill. 603, 71 N.E. 398; Beidler v. Branshaw, 200 Ill. 425, 65 N.E. 1086." It follows that the District Court erred in overruling defendants' motions for a directed verdict and for judgment notwithstanding the verdict.

The judgment is reversed with directions to enter judgment for defendants notwithstanding the verdict.