**ACKERMANN et al. v. HICKS et al.**

No. 10410.

United States Court of Appeals
Seventh Circuit.

Dec. 6, 1951.

As Amended on Denial of Rehearing
Jan. 31, 1952.

Martin F. Oehmke, William C. Dunham and Howard F. Boman, all of East St. Louis, Ill., Wayne Ely, Robert Ely, St. Louis, Mo., for appellant.

Philip G. Listeman, James H. Bandy, and Joseph H. Goldenhersh, all of East St. Louis, Ill., for appellees.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

This action for damages for alleged negligence arose from a collision in a street

intersection in Red Bud, Illinois, between an automobile driven by plaintiff Roy Ackermann, in which plaintiff Tillie Ackermann was a passenger, and a trailer truck owned by defendant Robert Hicks and driven by one Pettie. In their complaint plaintiffs alleged negligence by Hicks and Pettie, and also by the Kroger Company (hereinafter often called Kroger), the owner of a truck parked near the intersection at the time of the collision. Defendant Hicks cross-claimed against Kroger and counterclaimed against Roy Ackermann for damages to his truck. Kroger's motions for directed verdicts were denied. The jury returned verdicts in favor of Roy and Tillie Ackermann and Hicks against defendant Kroger, and absolved Pettie, Hicks and Roy Ackermann from liability. The trial court set aside the verdict in favor of Hicks and granted Kroger's alternative motion for a new trial. Judgment was entered in favor of plaintiffs Roy and Tillie Ackermann. This appeal was taken from the judgment in favor of the plaintiffs, and from the order denying Kroger's motion for a directed verdict against Hicks.

Red Bud is a community of about 1300 population located in Monroe County, Illinois. The intersection in question is formed by the crossing of north-south and east-west highways. State Route 3 enters the intersection from the south and then turns west; State Route 154 leads to the intersection from the east and there terminates; State Route 159 leads to the intersection from the north and also terminates there.

At about 5:15 A.M. on August 28, 1948, the Ackermann automobile was traveling in a westerly direction on Route 154. The weather conditions were clear and the surface of the pavements was dry. Roy Ackermann was driving and his aunt, Tillie Ackermann, occupied the left rear seat. The Hicks truck, driven by Pettie, approached the intersection from the south on Route 3. Routes 154 and 3 were improved State highways, 44 feet in width. The entire width of Route 154 was paved,

while Route 3 had an 18 foot concrete slab down the center and a 12.4 foot oiled parkway area on the east side. Black lines marked the center of each road.

Stop signs at the four corners required all traffic entering the intersection to stop. All of the following signs were erected on the east side of Route 3, facing south, the direction from which the Hicks truck approached the intersection: (1) a stop sign in the prescribed form [1] located 9 feet south of the south curbline extended of Route 154; (2) a sign with the legend, "No Parking to Corner,"[2] located 68 feet south of the aforementioned stop sign; (3) a yellow sign with the legend, "Stop Sign Ahead—Junction 154–159," located 225 feet south of the intersection; and (4) a sign indicating a speed limit of 20 miles per hour located 600 feet south from the intersection.

Business buildings were located at each corner and on either side of each highway in the block just before the intersection was reached. A filling station, fronting on both Highway 3 and Highway 154, was located on the southeast corner. Although the second and third stories of the filling station building extended to approximately the sidewalk line, the ground floor was open except for a corner pillar and two side pillars, thus enabling a motor vehicle to drive to the gasoline pumps from either highway. On Route 3 the curb was depressed (for use of the filling station patrons) from the corner south to about the center of the entrance to the Kroger store which adjoined the filling station building on the south, except that a small doorway and entrance, 4½ feet wide, leading to a back tavern separated the two business establishments. The Kroger store is 25 feet wide; the distance from the north to the south wall of the filling station was 27 feet.

Before and at the time of the collision a Kroger trailer truck was parked in front of the Kroger store for the delivery of merchandise. The body of the truck was 7

1. Octagonal in shape, 9 feet high, 32 inches wide, yellow in color, on which the word "Stop" was painted in black letters 6 inches high.

2. Erected by the Dept. of Public Works and Buildings.

feet wide, about 11 feet high, 36 feet long overall; its hood was 4½ feet high and the cab was 7 feet high.

The complaint alleged that Kroger was negligent in the manner in which its truck was parked, alleging it obstructed the view of motorists approaching the intersection; that it violated Sec. 187, Ch. 95½, Ill.Rev. Stats., by parking within 30 feet of the stop sign on the southeast corner of the intersection; and that it violated Sec. 187 of said statute by parking at a place where an official sign erected by the Department of Public Works and Buildings prohibited the parking of motor vehicles.

Considering the evidence most favorable to the plaintiffs, the jury had the right to believe the following testimony: that Ackermann drove his automobile on his right side of the center line of Route 154 as he approached the intersection in Red Bud; that he completely stopped his car at the intersection and it remained at a standstill for 5 to 15 seconds; that he looked to his right and left and listened for approaching traffic, and then proceeded slowly, looking ahead in a westwardly direction, and did not see the oncoming Hicks' truck until it was about 2 feet distant; that the Hicks' truck hit the Ackermann automobile at about the center of the left side, shoving it 50 to 60 feet to the northwest, causing serious injury to Tillie Ackermann, and lesser injury to Roy Ackermann.

The Hicks' vehicle which Pettie was driving was a Ford truck and a trailer, the overall length of which was 38 feet. Pettie had left Caruthersville, Missouri, about 3:00 or 4:00 o'clock the previous afternoon. After crossing the Mississippi River he proceeded in a northerly direction on Route 3 for 170 miles before reaching Red Bud. When he reached the outskirts of Red Bud, he slowed down the speed of his truck to 25 or 30 miles per hour, and was travelling at approximately that speed when his vehicle struck the Ackermann automobile. Pettie did not observe any of the signs heretofore described, and in spite of the fact the time was after daybreak he did not realize that he was approaching an intersection, nor did he notice the business buildings. Pettie testified, "I didn't know there was an intersection. If I knew there had been an intersection the wreck would have never happened." Pettie did not see the Ackermann automobile until almost the moment of the collision. He testified, "I seen him, hit my brakes, and hit him all about the same time." Pettie testified he did see the Kroger truck parked close to and parallel to the curb on the east side of the highway, and that after the collision he observed that the bumper of the truck was 20 feet south of the stop sign near the southeast corner of the intersection.

█ We are of the opinion that Kroger's motion for a directed verdict against Hicks should have been granted. Pettie, the driver of the Hicks truck, was guilty of contributory negligence as a matter of law. He failed to observe three unobstructed warning signs before reaching the point of collision. He did not notice either the intersection or the two-or-three story buildings on the four corners thereof. He drove into the intersection at 25 or 30 miles per hour, and admitted he had not paid any attention to cross streets or other warning signs in Red Bud. By his own testimony he convicts himself of contributory negligence as a matter of law. Illinois Central R. R. Co. v. Oswald, 338 Ill. 270, 275, 170 N.E. 247.

However, the claims of the Ackermanns are in a different category. Roy Ackermann brought his automobile to a complete stop at the intersection. The view of the Ackermanns to the south was obstructed first by the pillar supporting the upper stories of the filling station building, and secondly by the 11 foot high, 7 foot wide, and 36 foot long overall Kroger truck illegally parked less than 30 feet from the stop sign. Had the Kroger truck not obstructed their view, the Ackermanns might well have seen the oncoming Hicks' truck, and the jury could properly infer that by swerving his car to the right, or by bringing his car again to a complete stop, Ackermann might have avoided the collision.

█ Kroger insists however that it was not negligence to park the truck as it did, but if it should be so held, such negligence was not the proximate cause of the

collision. It is true that under Illinois law a statutory violation is regarded as no more than prima facie evidence of negligence. Alexander v. Industrial Board, 281 Ill. 201, 117 N.E. 1040; Hill v. Hiles, 309 Ill.App. 321, 32 N.E.2d 933; Cox v. Kroger Co., 7 Cir., 179 F.2d 382, 385; Plumber v. Spence, 7 Cir., 182 F.2d 958, 960. However, we think it clear that determining whether or not, under the circumstances disclosed by the evidence of this case, the Ackermanns' view of the oncoming truck was obstructed by the illegally parked truck was a question for the jury, as well as whether or not such obstruction of the view constituted negligence, and, if so, whether such negligence was a proximate cause of the collision. The jury has resolved these questions favorably to the plaintiffs. These questions of negligence and proximate cause could not be questions of law, because in our view fair minded men might reasonably reach different conclusions, thus making them properly questions for the jury.

■ Throughout the trial Kroger insisted that the bumper of its parked truck was more than 30 feet south of the stop sign located near the southeast corner of the intersection. At the trial and on this appeal Kroger relied heavily on a witness who testified that according to actual measurements made by him the distance was 31 feet. However, the jury was entitled to believe the testimony of four of plaintiffs' witnesses, who placed the distance at between 20 to 30 feet.

Admittedly the truck was parked in the area between the corner and the sign marked, "No Parking to Corner." Kroger also admits that the highway along which such sign was erected was under the jurisdiction of the Department of Public Works and Buildings, and that this department had caused the sign, "No Parking to Corner," to be erected there. Specific authority for the placing of official signs is found in two sections of the Uniform Act. Sec. 88(b), Ill.Rev.Stat. 1949, Ch. 95½, Sec. 185(b), provides: "The Department shall have authority to prohibit parking * * * on any street under the control and jurisdiction of the department * * * in such manner as to promote the public convenience and safety and so as to facilitate traffic, * *."

Sec. 29(a), Ill.Rev.Stat. 1949, Ch. 95½, Sec. 126(a) provides: "The Department shall place and maintain such traffic-control devices * * * on all highways under its jurisdiction as it shall deem necessary to indicate and to carry out the provisions of this Act or to regulate, warn, or guide traffic."

Kroger argues that the court's instructions setting forth these statutes were erroneous, claiming that the authority granted to the Department of Public Works and Buildings to place official signs prohibiting parking was an unconstitutional delegation of the legislative power. We do not reach the question of the constitutionality of the State statutes for the reason, as hereinbefore indicated, that the jury was entitled to believe that the truck was parked within the 30 foot no parking area which limitation is specifically provided by another Illinois statute.

We have considered other alleged errors in the court's instructions and in the exclusion of evidence, but we are of the opinion that none of them presents reversible error.

The judgment of the district court in favor of plaintiffs Roy and Tillie Ackermann is affirmed. The order denying a directed verdict against Hicks is reversed, with instructions that Kroger's motion for a directed verdict against Hicks be granted. It is so ordered.